24CA1231 Peo in Interest of BAH 09-19-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1231
Pueblo County District Court No. 24MH30046
Honorable Timothy O'Shea, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of B.A.H.,

Respondent-Appellant.

ORDER AFFIRMED

Division I
Opinion by JUDGE LIPINSKY
J. Jones and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 19, 2024

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     B.A.H. appeals the district court's order authorizing staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to involuntarily medicate him.  We affirm.

## I.     Background

¶ 2     B.A.H. was admitted to the hospital in June 2024 after being found incompetent to proceed in two criminal cases.  While he was in jail, before his admission to the hospital, he told personnel at the jail that his food was being poisoned.  He stopped eating a majority of his meals over a two-week period, including not eating for eight consecutive days.  The record indicates that the jail's medical staff "was concerned and wanted to make sure that [B.A.H.] wasn't developing any . . . negative consequences due to starvation," but that B.A.H. "was very paranoid and resistant to any sort of medical evaluation at that time."

¶ 3     The psychiatrist overseeing B.A.H.'s care at the hospital diagnosed him as having unspecified schizophrenia spectrum and other psychotic disorder.  According to the psychiatrist, B.A.H. was experiencing persistent delusions with associated disorganized behavior, including a belief that his food was also being poisoned at the hospital.

¶ 4        Upon B.A.H.'s admission to the hospital on June 6, 2024, he was offered psychiatric medication to target his psychosis, but he declined it.  On June 13, B.A.H. was placed on emergency psychiatric medication because of his increasingly erratic and unpredictable behavior, including threatening another patient.

¶ 5        After B.A.H. began taking the medications, he maintained an appropriate diet, was more compliant with hospital staff, and was less aggressive toward and threatening to other patients.  However, B.A.H. was caught trying to divert his oral medications, and on June 25, he told his psychiatric provider, "Take me off the medications.  I do not want them and I do not need them."  When he stopped taking the medications, he again became impulsive and aggressive.

¶ 6        On July 2, the People filed a petition for an order authorizing the involuntary administration of medications — specifically Zyprexa, Abilify, and Depakote — to B.A.H.  In the petition, the People said that the medications were "necessary to prevent a significant and long-term deterioration in [B.A.H.'s] mental condition and/or prevent the likelihood of [B.A.H.] causing serious harm to [himself] or others."

¶ 7    B.A.H.'s psychiatrist and B.A.H. testified at the hearing on the petition. The psychiatrist explained that Zyprexa and Abilify are antipsychotic medications, and that Depakote is a mood stabilizer. He said that B.A.H. was already prescribed Zyprexa and Depakote, but that he hoped to transition B.A.H. from Zyprexa to Abilify, which has a more favorable side effect profile and can be given in long-acting injectable form. In addition, the psychiatrist said that he was no longer recommending Depakote because B.A.H. had elevated liver enzymes that caused him abdominal discomfort, which is a known side effect of Depakote.

¶ 8    At the hearing, B.A.H. denied he had schizophrenia and made clear that he was still refusing to voluntarily take the medications that his psychiatrist prescribed.

¶ 9    At the conclusion of the hearing, the court found that B.A.H.'s psychiatrist had testified "credibly and persuasively" and adopted the psychiatrist's opinions. Then, applying the four-factor test from *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985), the court held that administration of Zyprexa and Abilify to B.A.H. was necessary (1) to prevent a significant and long-term deterioration in his mental

condition and (2) to prevent the likelihood that he will cause serious harm to himself or others at the hospital.

## II. Legal Principles and Standard of Review

¶ 10 We agree with the parties that the four-factor test from *Medina* applies. (Although B.A.H. was admitted to the hospital because he was found incompetent to proceed in his two criminal cases, the district court's ruling did not address whether the medications at issue were necessary to restore his competency in those cases. Instead, the court ruled that the medications were necessary to prevent a significant and long-term deterioration in B.A.H.'s mental condition and to prevent him from serious harm to himself or others. Therefore, the *Medina* test applies. *See People in Interest of R.F.*, 2019 COA 110, ¶ 11 n.1, 451 P.3d 1238, 1241 n.1.)

¶ 11 A court may authorize the involuntary administration of medication if the People demonstrate by clear and convincing evidence that (1) the person is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the person's mental health condition or to prevent the likelihood of the patient's causing serious harm to himself or others in the institution; (3) a

4

less intrusive treatment alternative is not available; and (4) the person's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the person in refusing treatment. *Medina*, 705 P.2d at 973.

¶ 12    Application of the *Medina* test involves mixed questions of fact and law. *People v. Marquardt*, 2016 CO 4, ¶ 8, 364 P.3d 499, 502. We defer to the district court's factual findings if they are supported by the record but review the court's legal conclusions de novo. *Id.* Resolving conflicts in testimony and determining the credibility of the witnesses are solely within the province of the fact finder. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23, 541 P.3d 1198, 1204.

¶ 13    We must determine whether the evidence, viewed as a whole and in the light most favorable to the prevailing party, is sufficient to support the court's order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13, 412 P.3d 827, 832. The testimony of the physician seeking to administer treatment may be sufficient, without more, to satisfy the *Medina* test. *Id.* at ¶ 30, 412 P.3d at 834.

### III. Analysis

¶ 14    B.A.H. does not contest the district court's rulings that the first, second, and fourth elements of the *Medina* test were met. Instead, he only challenges the sufficiency of the evidence supporting the court's ruling that a less intrusive treatment alternative was not available.

¶ 15    B.A.H. initially asserts that the psychiatrist "testified that [he] is responding well to his current medical regime of Zyprexa and Depakote." However, the court found, and the record shows, that B.A.H. began refusing to take those two medications approximately two weeks before the hearing, which is presumably what led the People to file their petition.

¶ 16    B.A.H. also asserts that, given that Zyprexa and Depakote worked effectively for him, it would be "unnecessarily intrusive to transition [him] to a third medication [Abilify], putting him at risk of experiencing additional side effects." But the psychiatrist testified that he planned to transition B.A.H. from Zyprexa to Abilify, *not* to prescribe full doses of both antipsychotics at the same time. Further, the court found, with record support, that Abilify has a better side effect profile than does Zyprexa. Although B.A.H.

focuses on the side effects he experienced from Zyprexa and Depakote, he does not suggest that he has ever taken Abilify. Accordingly, the record does not support B.A.H.'s contention that Abilify might cause him negative side effects.

¶ 17 B.A.H. further asserts that, because the psychiatrist did not review B.A.H.'s medical history, "it is impossible to determine the level of intrusiveness of any medication as it specifically pertains" to him. This argument rests on the psychiatrist's testimony that he did not have B.A.H.'s "prior medical records" and that he did not know if B.A.H. had any "underlying health conditions that could be affected or worsened by the medications." But the psychiatrist did not testify that, based on the information available to him, he was unable to determine the medications needed to treat B.A.H.'s mental health disorder or the appropriate dosages of such medications. And nothing in the record indicates that the psychiatrist's review of B.A.H.'s medical records would have led to a different treatment decision.

¶ 18 Finally, B.A.H. argues that, if the danger posed by not medicating him is his refusal to eat food, "surely there is a less intrusive method of improving [his nutrition] than forcibly

7

administering psychiatric medications." However, the record indicates that one of the primary manifestations of his psychosis was his belief that his food was being poisoned. The record reveals that B.A.H. maintained an appropriate diet when he took Zyprexa and Depakote. Thus, the record shows that B.A.H.'s refusal to eat resulted from his mental health disorder, which alternative feeding techniques would not address.

## IV. Disposition

¶ 19 The order is affirmed.

JUDGE J. JONES and JUDGE SULLIVAN concur.