24CA1497 Peo in Interest of Melrose 10-24-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1497
La Plata County District Court No. 24MH34
Honorable A. Nathaniel Baca, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Skyler Melrose,

Respondent-Appellant.

---

ORDER AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE GOMEZ
Dunn and Navarro, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 24, 2024

---

Sheryl Rogers, County Attorney, Katie Dittelberger, Assistant County Attorney, Durango, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     Respondent, Skyler Melrose, appeals the district court's order

(1) certifying him for involuntary short-term treatment and

(2) authorizing the involuntary administration of medications to

him.  He contends that the evidence was insufficient to sustain

either ruling.  We affirm in part, reverse in part, and remand for

further proceedings.

## I.     Background

¶ 2     Melrose drove his car into a lake.  When law enforcement

arrived on the scene, Melrose was behaving erratically and was very

disorganized.  He was transported to the emergency room and was

later admitted to Highlands Behavioral Health.

¶ 3     The People filed a notice of certification for short-term

treatment, as well as a motion to authorize the involuntary

administration of medications.  According to Melrose's psychiatrist

at Highlands, Melrose was expressing multiple delusions, was

preoccupied internally, and was responding to internal stimuli.  The

psychiatrist diagnosed him as suffering from schizophrenia.

However, Melrose was refusing medical care, including appropriate

medications.  The motion requested a court order authorizing the

involuntary administration of

- five antipsychotic medications — Haldol (haloperidol), Prolixin (fluphenazine), Zyprexa (olanzapine), Abilify (aripiprazole), and Invega (paliperidone); and

- three other medications — Benadryl (diphenhydramine), Cogentin (benztropine), and Ativan (lorazepam) — to treat any negative side effects.

¶ 4    At a hearing, the psychiatrist and Melrose both testified. The psychiatrist testified that this was the second time Melrose had been admitted to Highlands. During Melrose's first admission a few months earlier, he was treated with Haldol, became "much improved" and "pretty functional," and was discharged. So, during this second admission, the psychiatrist planned to treat Melrose with Haldol "to shorten his stay as soon as possible and discharge him home in stable condition." If Haldol was ineffective or caused negative side effects, the psychiatrist planned to try Prolixin next; and if that was ineffective or caused negative side effects, he planned to try Zyprexa. If Melrose improved, the psychiatrist planned to transition him to Abilify and Invega. According to the psychiatrist, Melrose would be at risk of significant and long-term

deterioration of his schizophrenia without an appropriate antipsychotic medication.

¶ 5    During Melrose's testimony, when he was asked whether he had a mental illness, he responded, "I have a disorder that comes and goes within the confines of vocabulary." Melrose testified that he wasn't willing to take any antipsychotic medication, and he denied experiencing any of the symptoms the psychiatrist had described him as having. He also claimed he didn't recall having driven into a lake.

¶ 6    Following the testimony, the district court issued an order certifying Melrose for short-term treatment and authorizing the involuntary administration of the eight medications.

## II.    Applicable Law and Standards of Review

¶ 7    On a challenge to the sufficiency of the evidence, we review the record to determine whether the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the district court's order. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23. We review de novo the court's conclusions of law and defer to the court's findings of fact if sufficient evidence in the record supports them. *Id.* The resolution of conflicts in testimony and

determinations of witness credibility are solely within the province of the fact finder. *Id.*

### III.  Short-Term Treatment

¶ 8      As pertinent here, to authorize short-term involuntary treatment, the district court must find by clear and convincing evidence that the respondent has a mental health disorder and, as a result of the disorder, is a danger to themself or others or is gravely disabled. § 27-65-109(1)(a), -113(1), C.R.S. 2024; *Ramsey,* ¶ 25.

¶ 9      The district court found that, due to Melrose's schizophrenia and resulting symptoms, he was both (1) a danger to himself and others and (2) gravely disabled.

¶ 10      On appeal, Melrose challenges both of those findings. In doing so, he first emphasizes the psychiatrist's testimony that he "has never exhibited any aggression" at Highlands and "has not been given any emergency medications." However, the evidence indicates that Melrose drove his car into a lake and was suffering significant effects of his schizophrenia before his admission to Highlands, which well supports the district court's finding that he would be a danger to himself and others without effective medical treatment.

¶ 11 Melrose also takes issue with the psychiatrist's explanation for his opinion that Melrose is gravely disabled. Specifically, the psychiatrist testified that Melrose "cannot explain and discuss anything about his mental health treatment" and that he "is not able to participate in a reasonable discussion of his future and treatment options." Melrose argues that these explanations "do not establish that [he] is incapable of caring for himself."

¶ 12 The statutory scheme defines "gravely disabled" as "a condition in which a person, as a result of a mental health disorder, is incapable of making informed decisions about or providing for the person's essential needs without significant supervision and assistance from other people," and, as a result, "is at risk of substantial bodily harm, dangerous worsening of any concomitant serious physical illness, significant psychiatric deterioration, or mismanagement of the person's essential needs that could result in substantial bodily harm." § 27-65-102(17), C.R.S. 2024.

¶ 13 The record here supports the district court's finding that Melrose's condition satisfied this definition. Indeed, the evidence indicates that Melrose lacks insight regarding his schizophrenia and need for treatment, and that without such treatment, he is at

risk of significant and long-term deterioration of his schizophrenia. The evidence also suggests that, without appropriate medication, Melrose would be "incapable of making informed decisions" about his "essential needs," resulting in a risk of "significant psychiatric deterioration" under section 27-65-102(17).

## IV. Involuntary Administration of Medication

¶ 14 A court may authorize the involuntary administration of medication if the People demonstrate by clear and convincing evidence that (1) the person is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the person's mental health condition or to prevent the likelihood of the patient causing serious harm to themself or others in the institution; (3) a less intrusive treatment alternative is not available; and (4) the person's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the person in refusing

treatment. *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985).[1]  The

testimony of a physician seeking to administer treatment may itself

be sufficient to satisfy the four elements.  *People in Interest of*

*R.K.L.*, 2016 COA 84, ¶ 30.

¶ 15    Melrose doesn't contest the district court's rulings that the

first, second, and fourth elements of the *Medina* test were met.

Instead, he only challenges the sufficiency of the evidence

supporting the court's ruling on the third element — that is, that a

less intrusive treatment alternative wasn't available.

¶ 16    This third element "encompasses not only the gravity of any

harmful effects from the proposed treatment but also the existence,

feasibility, and efficacy of alternative methods of treating the

patient's condition or of alleviating the danger created by that

condition."  *Medina*, 705 P.2d at 974.  An alternative treatment is

---

[1] When the state seeks to administer medication involuntarily to render a criminal defendant competent to stand trial, courts apply the United States Supreme Court's test in *Sell v. United States*, 539 U.S. 166, 180-81 (2003).  But state law tests apply when, as here, the state seeks to administer medication involuntarily for "a *different* purpose," including a purpose "related to the individual's dangerousness, or . . . the individual's own interests where refusal to take drugs puts [the individual's] health gravely at risk."  *Id.* at 182; *see also People in Interest of R.F.*, 2019 COA 110, ¶ 11 n.1.

7

considered to be less intrusive if it has fewer harmful side effects and is at least as effective at treating the patient's condition as the proposed treatment. *People in Interest of R.C.*, 2019 COA 99M, ¶ 9.

¶ 17 The district court didn't make specific findings as to this element. Instead, in its oral ruling, the court found only that, "[a]s noted by the doctor, there is not a less intrusive treatment alternative that's available at this time and the doctor is recommending medication"; and in its written order, it made a similar ruling that there was no less intrusive treatment alternative than treating Melrose with antipsychotic medications.

¶ 18 Melrose argues that the district court erred in authorizing the use of so many medications, and that a less intrusive treatment alternative would be to require the psychiatrist to specify which medications he believes should be prescribed.

¶ 19 We construe Melrose's argument on appeal as challenging the portion of the district court's order authorizing five antipsychotic medications (and not the portion of the order authorizing three medications to treat any negative side effects). That is because the testimony of the psychiatrist that Melrose relies on in making the argument is the following explanation from the psychiatrist for why

8

he was requesting five antipsychotic medications: "[I]t's normal practice to request several medications. If one medication is not effective or [causes] side effects, we could switch this medication to [an]other and it could give us some flexibility and prevent us [having] to go into the court every time we need to switch [to] a new medication." The psychiatrist further testified that it is generally appropriate to treat a patient with only one antipsychotic medication at any one time.

¶ 20 Here, the psychiatrist's testimony that any other antipsychotic medications beyond Haldol might be necessary — despite that Haldol had been effective for Melrose in the past — was speculative. And the record indicates that Melrose had never taken any of those other antipsychotic medications.

¶ 21 That makes this case like *R.K.L.* and *R.C.*

¶ 22 In *R.K.L.*, although the patient had responded well in the past to Invega and his psychiatrists intended to use only that medication, they added ten other antipsychotic medications to the authorization request "to allow them the flexibility to treat [the patient] effectively in case he stopped responding to Invega or developed an intolerable allergy or side effect." *R.K.L.*, ¶ 38. The

division reversed the district court's ruling that there was no less intrusive alternative to ordering those ten medications because, in contrast to the evidence establishing the efficacy of Invega to treat the patient's mental illness, there was no evidence regarding the efficacy or the side effects of the other ten medications. *Id.* at ¶¶ 39-40.

¶ 23    Similarly, in *R.C.*, although the patient was responding well to Zyprexa, the People requested — and the district court issued — an order authorizing the involuntary administration of five other medications in addition to Zyprexa. *R.C.*, ¶¶ 3-5, 10. The patient's psychiatrist testified that although the patient was being treated effectively with Zyprexa, he was "not sure if that would be the case over . . . time." *Id.* at ¶ 10. The division reversed, concluding that the evidence showed that the least intrusive option was ordering only Zyprexa because the mere possibility that the patient might need any of the other five medications at some unspecified time in the future didn't warrant including those medications in the order. *Id.* at ¶¶ 12-16.

¶ 24    We are persuaded by these decisions and are unpersuaded by the People's reliance on *People in Interest of Uwayezuk*, 2023 COA

69. That case involved a patient's "first break" of schizophrenia where there was no prescribing history of any antipsychotic medications and so the psychiatrist didn't know which of the requested antipsychotic medications would be effective. *Id.* at ¶ 61. Further, the division there was not presented with the issue of whether ordering all six medications constituted the least intrusive treatment option. *See id.* at ¶ 58. Instead, the patient challenged only the fourth *Medina* element, arguing — without differentiating between any of the medications — that his need for them was not sufficiently compelling to override his bona fide interest in avoiding the risks of negative side effects. *See id.* at ¶¶ 60-63. Thus, the division's analysis was limited to comparing the patient's need for treatment balanced against his interest in refusing medication, without differentiating between any of the medications. *See id.*

¶ 25 For these reasons, we conclude that the district court erred in ordering the involuntary administration of the other antipsychotic medications beyond Haldol.

## V. Disposition

¶ 26 The order is affirmed in part and reversed in part. The portion of the order certifying Melrose for short-term treatment and

11

authorizing the involuntary administration of Haldol (haloperidol), Benadryl (diphenhydramine), Cogentin (benztropine), and Ativan (lorazepam) is affirmed. The portion of the order authorizing the involuntary administration of Prolixin (fluphenazine), Zyprexa (olanzapine), Abilify (aripiprazole), and Invega (paliperidone) is reversed, and the case is remanded for the district court to amend the order by removing those medications from it.

JUDGE DUNN and JUDGE NAVARRO concur.