24CA1914 Peo in Interest of EME 12-26-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1914
Pueblo County District Court No. 24MH30074
Honorable Timothy O'Shea, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of E.M.E.,

Respondent-Appellant.

ORDER AFFIRMED

Division V
Opinion by JUDGE LUM
Freyre and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 26, 2024

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     E.M.E. appeals the district court's order authorizing staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to medicate him involuntarily.  We affirm.

## I.     Background

¶ 2     E.M.E. was admitted to the hospital in August 2024 after being found incompetent to proceed in a criminal case.  The record indicates that, when he arrived at the hospital, he was in a very severe psychotic state.  Specifically, he presented with severe aggressive behavior, extreme agitation, paranoid and delusional thought content, and impulsivity.  During his first week at the hospital, he repeatedly attempted to hit and bite hospital staff.  His combative and erratic behavior led hospital staff to detain him in seclusion and restraints and give him emergency medications.

¶ 3     Later that month, the People filed a motion seeking authorization to medicate E.M.E. involuntarily with the antipsychotic medications Zyprexa, Thorazine, and Haldol, and the mood-stabilizing medication Depakote.  The district court granted the motion.

¶ 4     E.M.E.'s psychiatrist at the hospital began treating him with Zyprexa and Depakote on a scheduled basis, and Thorazine and

Haldol for instances of acute agitation. Although E.M.E. showed some improvement on the medications in terms of requiring less frequent seclusion and restraints, he continued to exhibit paranoia, agitation, and aggressive behavior, and he remained on assault precautions.

¶ 5     In October, the People filed the motion at issue seeking authorization to medicate E.M.E. involuntarily with the antipsychotic medication Clozaril, in addition to the four medications listed above.

¶ 6     At the hearing on the motion, E.M.E.'s psychiatrist, who testified as an expert in clinical psychiatry, described E.M.E.'s symptoms and said that he had been diagnosed with an unspecified mood disorder. The psychiatrist explained that E.M.E. had continued to exhibit paranoia, agitation, and aggressive behavior despite increasing his Zyprexa and Depakote to the highest therapeutic level, and despite frequent use of "PRN" medications for agitation and aggression.[1] The psychiatrist testified that the appropriate course was to start E.M.E. on Clozaril, while

---

[1] The record suggests that the "PRN" medications were the Thorazine and Haldol that the court had already approved.

2

maintaining him on Depakote, which would hopefully allow him to taper off Zyprexa and reduce his need for PRN medications.

¶ 7 During E.M.E.'s testimony, he denied having a mental illness and testified that he did not need any medications and would not take the medications without a court order. He further testified that the medications were causing him side effects of muscle fatigue, dry skin, and weight gain. He also testified that (1) his father is Indigenous, specifically Inuit; (2) "we believe food is medicine and massage"; and (3) his Inuit cultural beliefs precluded him from taking medications. On cross-examination, he testified that the medications were "too much," that he did not want to take scheduled medications, and that if he took a PRN he "would request that it be substantially less."

¶ 8 Following the testimony, the district court found that the psychiatrist had testified credibly and persuasively, and it expressly adopted the psychiatrist's opinions. The court then examined each of the four elements of the test from *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985), concluded that all four elements were met, and granted the petition.

## II.    Applicable Law and Standard of Review

¶ 9      Under the *Medina* test,[2] a district court may authorize the involuntary administration of medication if the People demonstrate by clear and convincing evidence that (1) the person is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the person's mental health condition or to prevent the likelihood of the patient causing serious harm to himself or others in the institution; (3) a less intrusive treatment alternative is not available; and (4) the person's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the person in refusing treatment.  *Id.*

¶ 10     Application of the *Medina* test involves mixed questions of fact and law.  *People v. Marquardt*, 2016 CO 4, ¶ 8.  We defer to the

---

[2] A different test applies to petitions to administer involuntary medication for the purpose of restoring competency.  *See People in Interest of R.F.*, 2019 COA 110, ¶ 11 n.1.  Although E.M.E. was admitted to the hospital for that purpose, the parties do not dispute — and we agree — that *People v. Medina*, 705 P.2d 961 (Colo. 1985), applies here because the purpose of the petition in this case is to prevent E.M.E. from causing harm to others and to prevent a significant and long-term deterioration in his mental condition.  *R.F.*, ¶ 11 n.1.

district court's factual findings if they have record support, while we review the court's legal conclusions de novo. *Id.* Resolving conflicts in testimony and determining the credibility of the witnesses are solely within the province of the fact finder. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23.

¶ 11 We must determine whether the evidence, viewed as a whole and in the light most favorable to the prevailing party, is sufficient to support the district court's order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. The testimony of the physician seeking to administer treatment may be sufficient, without more, to satisfy the *Medina* test. *Id.* at ¶ 30.

### III. Analysis

¶ 12 E.M.E. concedes that the first, second, and third elements of the *Medina* test were met. He only challenges the sufficiency of the evidence regarding the fourth *Medina* element, specifically, that his need for medications is sufficiently compelling to override any bona fide and legitimate interest he has in refusing the medications.

¶ 13 Addressing E.M.E.'s interests in not taking the medications, the district court said, "[E.M.E.] testified that he experiences muscle fatigue and dry skin as side effects from the current medications.

5

And, also, that he is of indigenous heritage, specifically Inuit. And that in his culture, food and massage constitute medical treatment . . . over pharmaceuticals." The court then found that these interests were not bona fide and legitimate, explaining as follows: "[E.M.E.] also testified that he would take less medications as PRN. So it's not clear to the Court that his indigenous heritage, his Inuit background, strictly prohibits pharmaceutical medications . . . . So the Court cannot make a finding that his reasons for refusal are bona fide and legitimate."

¶ 14    The district court's finding that E.M.E.'s interests were not bona fide and legitimate is not sufficiently supported by the record or the court's statements explaining its finding. Notably, the court did not make a specific credibility finding about E.M.E.'s testimony. Also, the court appears to have employed some heightened standard in implying that E.M.E.'s Inuit background must "strictly prohibit[]" pharmaceutical medications for his cultural beliefs to be considered a "bona fide and legitimate" interest. And finally, unlike E.M.E.'s cultural beliefs, the court did not specifically address the legitimacy of E.M.E.'s interest in avoiding the side effects he had been experiencing from the medications.

¶ 15     That being said, we discern no error in the court's ultimate conclusion that E.M.E.'s need for the medications was sufficiently compelling to override any bona fide interest in refusing the medications.  We reach that conclusion because the record clearly demonstrates the severity of E.M.E.'s condition and symptoms — his severe aggressive behavior, extreme agitation, and paranoid and delusional thought content — which often required "extreme staff intervention," seclusion, and restraints.  Additionally, the psychiatrist testified that (1) given the severity of E.M.E.'s initial presentation, he would experience a significant and likely long-term deterioration of his mental condition without the medications; (2) E.M.E. would be monitored for side effects, and medications were available to "neutralize" some of the side effects; and (3) failure to medicate E.M.E. would be more harmful than the risks posed by the medications.

## IV.   Disposition

¶ 16     The order is affirmed.

JUDGE FREYRE and JUDGE GROVE concur.