25CA0840 Peo in Interest of McNair 08-14-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0840
Pueblo County District Court No. 25MH30036
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Lonny Lynn McNair,

Respondent-Appellant.

---

ORDER AFFIRMED

Division IV
Opinion by JUDGE MEIRINK
Freyre and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 14, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1 Lonny Lynn McNair appeals the district court's order authorizing the involuntary administration of an antipsychotic medication for the purpose of restoring him to competency to stand trial in a criminal case. We affirm.

## I. Background

¶ 2 In Adams County District Court case number 20CR2735, McNair was charged with numerous serious crimes, including class 1 felonies.

¶ 3 After being found incompetent to proceed in that case, McNair was admitted to the Colorado Mental Health Hospital in Pueblo (the hospital) in September 2024 to restore his competency. McNair's psychiatrist at the hospital diagnosed him with delusional disorder, persecutory type. His primary, consistent symptom has been having prominent persecutory delusions that he is being targeted and surveilled by a secret, expansive, and sophisticated network of people. His delusions include believing that this network of people "take[] over" his phone, leading him to destroy the phone and get a new phone every month; that people in the network tried to poison him; and that strangers he meets are involved in the network.

¶ 4     In March 2025, McNair was again found incompetent to proceed.  In April, the State filed a petition for authorization to medicate McNair involuntarily with aripiprazole (Abilify), olanzapine (Zyprexa), and paliperidone (Invega).

¶ 5     At the hearing on the petition, McNair's psychiatrist at the hospital and McNair both testified.  The psychiatrist, an expert in clinical psychiatry, testified that McNair's delusional disorder constitutes a substantial disorder that grossly impairs his judgment or capacity to recognize reality or control behavior.  The psychiatrist also testified that antipsychotic medication is necessary to improve McNair's delusional disorder, and that without the medication, he will not be restored to competency.

¶ 6     The psychiatrist clarified that he was no longer seeking to treat McNair with paliperidone, but that he was requesting authorization to treat him with aripiprazole and olanzapine.  He testified that he planned to initially treat McNair with only aripiprazole, and that if McNair did not adequately respond to treatment with that medication, he would instead treat McNair with olanzapine.  The psychiatrist also reported that McNair does not

believe he has delusional disorder, does not believe he needs any antipsychotic medication, and will not take medication voluntarily.

¶ 7    During McNair's testimony, he testified that he does not have a delusional disorder, or any other mental illness, and does not want to take medication. He also testified at length about the network of people targeting and surveilling him.

¶ 8    Following the testimony, the district court found that the psychiatrist had testified credibly and persuasively, and it adopted the psychiatrist's opinions. As to olanzapine, the court found that the People had not met their burden of proving the need to use that backup medication. However, as to aripiprazole, the court granted the petition, finding that the People had met their burden of proving all four elements of the test from *Sell v. United States*, 539 U.S. 166, 180-81 (2003).

## II.    Applicable Law

¶ 9    The parties agree that the four-part test from *Sell* applies here. Under that test, the State must prove that:

(1)    "important governmental interests" — such as "bringing to trial an individual accused of a serious crime" — are at stake,

3

(2)  involuntarily medicating the person will "significantly further" those interests,

(3)  involuntarily medicating the person is "necessary" to further those interests, and

(4)  administering the medication to the person is "medically appropriate," in other words, "in the patient's best medical interest in light of his medical condition."

*Id.* (emphasis omitted).

¶ 10  The State must prove these elements by clear and convincing evidence.  *People in Interest of Joergensen*, 2022 COA 126, ¶ 12; *People in Interest of R.F.*, 2019 COA 110, ¶ 16.  A physician's testimony alone may constitute clear and convincing evidence.  *See People v. Pflugbeil*, 834 P.2d 843, 846-47 (Colo. App. 1992).

### III.  Analysis

¶ 11  McNair does not contest the district court's rulings that the People met their burden of proving the first, second, and third elements of the *Sell* test.  However, he challenges the sufficiency of the evidence supporting the fourth *Sell* element — that treating him with aripiprazole is "medically appropriate."

¶ 12 In determining whether the evidence was sufficient to support an involuntary medication order, we view the evidence as a whole and in the light most favorable to the prevailing party. *See People in Interest of R.K.L.*, 2016 COA 84, ¶ 13.

¶ 13 A district court's findings with respect to the fourth *Sell* element are factual in nature and are therefore subject to review for clear error. *R.F.*, ¶ 21; *People in Interest of Hardesty*, 2014 COA 138, ¶ 17. We defer to findings of fact that are supported by evidence in the record. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23. We also defer to a district court's credibility determinations and its weighing of conflicting evidence. *Id.* at ¶ 30.

¶ 14 Here, the district court found that treating McNair with aripiprazole was medically appropriate. It expressly based its finding on "everything [the psychiatrist] has already testified to," which it found to be "very credible."

¶ 15 The district court's finding is supported by the psychiatrist's testimony that treating McNair with antipsychotic medication was "medically appropriate" and was in McNair's "best medical interest," given his mental condition. Specifically, the psychiatrist testified that there is a "substantial likelihood" that treating McNair with

antipsychotic medication would improve his delusional disorder, aripiprazole is particularly effective in treating delusional disorders, and there was no alternative treatment that would work as effectively as antipsychotic medication. The psychiatrist also testified that (1) McNair would be regularly monitored for any side effects that aripiprazole might cause; (2) the risk is "extremely low" that McNair would experience any side effects that would impair his ability to assist in his defense in the criminal case; (3) aripiprazole has a more favorable side effect profile relative to other antipsychotic medications; (4) there are additional medications that could neutralize potential side effects; and (5) McNair does not have any underlying medical conditions that would be exacerbated by using antipsychotic medication.

¶ 16 Given this record support and the district court's credibility determination, we defer to the court's finding that treating McNair with aripiprazole was medically appropriate and, therefore, that the fourth *Sell* element was met here. *See Sell*, 539 U.S. at 181; *Ramsey*, ¶ 23; *R.F.*, ¶ 21.

¶ 17 In contesting the district court's finding on the fourth *Sell* element, McNair points to the psychiatrist's testimony that his

delusional disorder does "not significantly impair his ability to function" or cause him to act in "any obviously bizarre or odd ways," and that, despite his delusional disorder, he is able to take care of his basic needs and has not been a danger to himself or others at the hospital.

¶ 18 However, the district court found that medicating McNair with aripiprazole would help reduce his belief in the delusions, thereby reducing his anxiety and depression caused by the delusions. That finding is supported by the psychiatrist's testimony that McNair's delusional disorder causes him to feel "distress[ed]" and "persecuted," and that his psychotic symptoms "contribut[e] to his anxiety" and "a downturn in his mood, feeling depressed about his current life circumstances." The psychiatrist also testified that McNair's delusions, if left untreated, will "significantly impact his rational decision making." So although McNair's delusional disorder may not affect, for example, his ability to function in taking care of his basic needs, the district court's finding and the record show that treating McNair's disorder with antipsychotic medication will benefit him medically by improving his anxiety, depression, and rational decision-making. Therefore, we reject McNair's assertion

7

that "there is no real benefit" in treating him with antipsychotic medication beyond restoring his competency to stand trial.

¶ 19     McNair downplays the psychiatrist's testimony that the medication will improve his feelings of distress and persecution, arguing that he is "far more distressed" about taking antipsychotic medication. We acknowledge McNair's testimony that he is "terrifie[d]" of taking antipsychotic medication because he "do[es]n't know what [it] will do to [him]" but believes it could "mess with [him] negatively" in "every type of way" and have "aftereffects" on his "life." However, we may not reweigh the evidence, and the district court specifically credited the psychiatrist's testimony regarding the reasons that administering the medication was medically appropriate, which included not only reducing his feelings of distress and persecution, but also reducing his depression and improving his rational decision-making. *See Ramsey*, ¶ 30. Viewing the evidence as a whole and in the light most favorable to the prevailing party, as we must, the evidence was sufficient to show that treating McNair with antipsychotic medication was medically appropriate. *See R.K.L.*, ¶ 13.

¶ 20    McNair also emphasizes the "plethora" of possible side effects that aripiprazole could conceivably cause. But again, we cannot reweigh the evidence, and the district court's finding that treating McNair with aripiprazole was medically appropriate was based in part on the psychiatrist's testimony that McNair would be regularly monitored for any side effects and that there were additional medications that can help neutralize side effects. *See id.*

## IV. Disposition

¶ 21    The order is affirmed.

JUDGE FREYRE and JUDGE GOMEZ concur.