25CA1120 Peo in Interest of Zambrano 08-21-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1120
Pueblo County District Court No. 24MH30123
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Joshua D. Zambrano,

Respondent-Appellant.

---

ORDER AFFIRMED

Division III
Opinion by JUDGE SCHOCK
Dunn and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 21, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1    Respondent, Joshua D. Zambrano, appeals the district court's order authorizing staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to medicate him involuntarily. We affirm.

## I.    Background

¶ 2    Zambrano was committed to the hospital after being found incompetent to proceed in a criminal case. He was diagnosed with schizophrenia and presented with symptoms that included delusions, paranoia, impulsivity, and assaultive behavior. After he became verbally aggressive and physically assaultive toward hospital staff, the hospital began giving him emergency medication.

¶ 3    In December 2024, the district court authorized the hospital to involuntarily administer various antipsychotic and mood stabilizing medications to Zambrano. Two months later, when Zambrano continued to display assaultive behavior and experience psychotic symptoms, the People petitioned to change his medication. The district court granted the petition, and a division of this court affirmed. *See People in Interest of Zambrano*, (Colo. App. No. 25CA0356, May 8, 2025) (not published pursuant to C.A.R. 35(e)).

¶ 4    In June 2025, the People filed a petition for review of the involuntary treatment order. The People requested authorization to

1

(1) continue administering UZEDY, a monthly intermuscular injection of risperidone (Risperdal); and (2) supplement that monthly injection with a daily dose of Risperdal as necessary.

¶ 5   At an evidentiary hearing, Zambrano's treating psychiatrist, Dr. Hareesh Pillai, testified about Zambrano's schizophrenia and accompanying symptoms.  He also described the requested medications, explained their possible side effects, and opined that the medications were necessary to treat Zambrano's symptoms.

¶ 6   Zambrano also testified.  He denied having a mental illness and explained that he was unwilling to take the requested medications, in part because of his "Christian conviction" that he should not take mind-altering substances.  He also testified that he had experienced various side effects from the medications, including trouble sleeping, violent mood swings, and weight gain.

¶ 7   The district court granted the petition.  It found that Dr. Pillai had testified "credibly and persuasively" and that the People had proved all four elements of the test in *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985).  The court issued an order authorizing the involuntary administration of the requested medications.

## II.    Applicable Law and Standard of Review

¶ 8      A district court may order the involuntary administration of medication if the People prove by clear and convincing evidence that (1) the patient is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the patient causing serious harm to himself or others at the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment.  *Id.*[1]

¶ 9      Application of the *Medina* test involves mixed questions of fact and law.  *People v. Marquardt*, 2016 CO 4, ¶ 8.  We defer to the district court's factual findings if they have record support and review its legal conclusions de novo.  *Id.*  When a patient challenges

---

[1] A different test applies when the state seeks to administer medication to a criminal defendant for the purpose of rendering them competent to stand trial.  *See Sell v. United States*, 539 U.S. 166, 180 (2003); *People in Interest of R.F.*, 2019 COA 110, ¶¶ 10-15, ¶ 11 n.1.  But the parties agree that the test from *People v. Medina*, 705 P.2d 961 (Colo. 1985), applies in this case because the purpose of the medication is to prevent harm to others and a significant, long-term deterioration in Zambrano's mental condition.

the sufficiency of the evidence supporting an involuntary medication order, we must affirm if the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. The testimony of the treating psychiatrist alone may suffice. *Id.* at ¶ 30.

### III. Analysis

¶ 10    Zambrano contends that the evidence was insufficient to prove the fourth *Medina* element — that his need for the requested medications is sufficiently compelling to override his bona fide and legitimate interest in refusing to take them. We disagree.

¶ 11    In assessing this element, a court must first determine "whether the patient's refusal is bona fide and legitimate." *Medina*, 705 P.2d at 974. If it is, the court must then determine "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 12    The district court in this case found that Zambrano's religious conviction and concerns about potential side effects — including weight gain and trouble sleeping — were bona fide and legitimate

4

interests. But it found that these bona fide and legitimate interests were outweighed by the state's legitimate interest in "preserving [Zambrano's] life and health . . . and protecting the safety of those in the institution." In making this determination, the court cited Zambrano's violent behavior and his history of hunger strikes.

¶ 13 The record supports the district court's finding. Dr. Pillai opined that the failure to medicate Zambrano would be more harmful than the risks posed by the requested medications. In support of this opinion, Dr. Pillai testified that, without the requested medications, Zambrano's psychotic symptoms would likely reemerge, and he would "decompensate to the point of how he presented when he . . . arrived at the hospital." At that point, Zambrano was "in a deteriorated state," made "delusional and paranoid comments," had poor hygiene, and "frequently engaged in assaultive behavior and aggression" toward staff members, including Dr. Pillai himself. All of this had improved since Zambrano had been placed on the requested medications.

¶ 14 Dr. Pillai acknowledged that the requested medications had potential adverse side effects. He also acknowledged that if Zambrano was given the oral Risperdal as a supplement, the risk of

side effects would increase. But he testified that Zambrano "has tolerated this medication relatively well" and that there had not been any "objective reports of side effects by nursing staff on his unit." Dr. Pillai also explained that the hospital would continue to monitor any new side effects, and that additional medications were available to neutralize some of those side effects if they arose.

¶ 15 Zambrano contends that the state's interest in treating him does not outweigh his legitimate interest in avoiding serious side effects.[2] But the only side effects he identifies are "trouble sleeping" and "violent mood swings," both of which Dr. Pillai addressed.

¶ 16 As to the sleep difficulties, Dr. Pillai testified that "poor sleep" had been "a hallmark" of Zambrano's presentation "earlier in the hospital course" but that it had not been "objectively reported" by nursing staff as a side effect of the medication. He also explained that Zambrano's treatment team would continue to monitor his sleep and, if needed, could offer a medication to help him sleep.

---

[2] Zambrano also mentions his religious beliefs as a legitimate reason for refusing treatment. But because he does not develop this argument, we do not address it further. *See Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12 (declining to consider undeveloped arguments), *aff'd*, 2021 CO 56.

¶ 17    As to Zambrano's complaint of violent mood swings, Dr. Pillai testified that violent mood swings are "not normally seen as a side effect or adverse effect of [the requested] medication." Instead, Dr. Pillai explained that "UZEDY and other antipsychotic medications can be used to treat agitation or aggression." And on the whole, Dr. Pillai believed that Zambrano's assaultive behavior had *decreased* since he began taking the requested medications.

¶ 18    Zambrano asserts that his testimony that he has not been offered any additional medication to alleviate his side effects undermines Dr. Pillai's testimony that such medication would be provided. But the district court found Dr. Pillai's testimony credible. We must defer to that credibility determination. *See People in Interest of Ramsey*, 2023 COA 95, ¶ 30.

¶ 19    Moreover, Zambrano does not address the other side of the equation — his need for the medications. The district court *accepted* Zambrano's assertion that he had bona fide and legitimate reasons for refusing to take the medication. But it found that Zambrano's need for the medications outweighed those concerns.

¶ 20    Because the record supports the district court's findings, we may not second-guess them. *See R.K.L.*, ¶ 13.

## IV.   Disposition

¶ 21    The order is affirmed.

JUDGE DUNN and JUDGE BROWN concur.