The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 18, 2019

## 2019COA110

**No. 19CA0304, *People in Interest of R.F.* — Criminal Law — Competency to Proceed — Involuntary Administration of Medication**

The People petitioned the district court for an order allowing them to administer antipsychotic medication to respondent for the purpose of rendering him competent to stand trial, and, after a hearing, the court granted the petition.

A division of the court of appeals adopts the four-part test articulated in *Sell v. United States*, 539 U.S. 166 (2003), for evaluating the state's request to involuntarily administer antipsychotic medications to restore a defendant to competency. Under the *Sell* test, the state must prove by clear and convincing evidence that (1) important governmental interests are at stake; (2) involuntary medication will significantly further those interests; (3)

involuntary medication is necessary to further the governmental interests; and (4) the administration of the drugs is medically appropriate. The second and third factors are necessarily established by proof of subsidiary facts: that the medication is substantially likely to restore the defendant to competency and is substantially unlikely to have side effects that would interfere with his ability to participate in his defense (second factor), and that no other less intrusive alternative treatment is likely to achieve substantially the same result and there is no less intrusive means for administering the medication (third factor). The division concludes that an appellate court reviews the first factor de novo but the remaining factors for clear error.

In adopting the four-part *Sell* test, the division disagrees with *People in Interest of Hardesty*, 2014 COA 138, which adopted a variation of the *Sell* test consisting of eight factors and treated the second and third factors as requiring proof separate and independent of proof of the subsidiary facts.

Because the respondent, using the eight-part test, expressly concedes the sufficiency of the evidence to support the district court's order, the division affirms.

COLORADO COURT OF APPEALS                    **2019COA110**

Court of Appeals No. 19CA0304
Pueblo County District Court No. 19MH34
Honorable Jill S. Mattoon, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of R.F.,

Respondent-Appellant.

ORDER AFFIRMED

Division V
Opinion by JUDGE HARRIS
Richman and Tow, JJ., concur

Announced July 18, 2019

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner-Appellee

The Law Firm of John L. Rice, John L. Rice, Pueblo, Colorado, for Respondent-
Appellant

¶ 1    *Sell v. United States*, 539 U.S. 166 (2003), established a four-part test for evaluating petitions to involuntarily administer antipsychotic medication to render the respondent competent to stand trial.  In this case, we adopt the framework as set out by the Supreme Court, thus disagreeing with another division of this court, *People in Interest of Hardesty*, 2014 COA 138, which framed the test as having eight parts.

¶ 2    Respondent, R.F., appeals the district court's order allowing doctors at the state mental health hospital to involuntarily administer antipsychotic medication for the purpose of restoring him to competency to stand trial.  Because he expressly concedes the sufficiency of the evidence to support the district court's order, we affirm.

## I.    Background

¶ 3    The People charged R.F. with second degree assault.  The district court ordered a competency evaluation, and, in July 2018, R.F. was diagnosed by a psychiatrist at the state mental health hospital with "psychosis — not otherwise specified" and found incompetent to stand trial.

¶ 4     In January 2019, after other restoration efforts proved unsuccessful, the People petitioned the court under section 16-8.5-112(1), C.R.S. 2018, for permission to involuntarily administer antipsychotic medications and to monitor any side effects. The district court held an evidentiary hearing on the petition.

¶ 5     R.F. and his treating psychiatrist, Dr. Lennart Abel, testified at the hearing. Dr. Abel offered expert testimony that R.F. suffered from persistent delusions and was unlikely to be rendered competent without antipsychotic medications. He opined that the medications the People sought to involuntarily administer were substantially likely to render R.F. competent, but he did not provide any basis for his conclusion, other than a brief reference to "somebody who suffer[ed] from psychosis not otherwise specified" whom he had once restored to competency.

¶ 6     Dr. Abel acknowledged that R.F. had not previously taken antipsychotic medication and that he did not know "how [R.F. was] going to react to these medications." He conceded that R.F. might be part of the "small group" of patients with delusional disorders who do not respond to antipsychotic medication; in that event, Dr.

2

Abel testified, he would "try other medications, other antipsychotic medications that are not currently on this list."

¶ 7    R.F. testified that he had refused the medication because he disagreed with Dr. Abel's diagnosis and treatment plan. He said he would not consider taking the medications voluntarily until he received a second opinion.

¶ 8    The district court found that the People had met their burden to show that administration of the medication was necessary to advance the state's interest in restoring R.F. to competency. Specifically, the court found that

- R.F. suffers from psychosis;

- R.F. is incapable of making treatment decisions because of his mental health disorder;

- reasonable efforts have been made to obtain voluntary acceptance of treatment, but R.F. objects to the proposed treatment and refuses to take antipsychotic medication;

- a less intrusive treatment option is not available;

- an important governmental interest is at stake;

- the medication is substantially likely to render R.F. competent to stand trial;

- the medication is substantially unlikely to have side effects that will affect R.F.'s ability to assist in his defense;

- alternative or less intrusive treatment is unlikely to achieve substantially similar results; and

- the medication is medically appropriate.

Based on these findings, the district court granted the People's petition.

## II. Analysis

### A. Legal Principles and Standard of Review

¶ 9     Forcing "medication into a nonconsenting person's body represents a substantial interference with that person's liberty." *Washington v. Harper*, 494 U.S. 210, 229 (1990). In the case of antipsychotic drugs, "that interference is particularly severe," *Riggins v. Nevada*, 504 U.S. 127, 134 (1992), because "such medications threaten[] an individual's 'mental, as well as physical, integrity,'" *United States v. Watson*, 793 F.3d 416, 419 (4th Cir. 2015) (quoting *United States v. White*, 620 F.3d 401, 422 (4th Cir. 2010) (Keenan, J., concurring)). Thus, the Due Process Clause of the Fourteenth Amendment recognizes an interest in avoiding

involuntary administration of antipsychotic drugs. *Harper*, 494 U.S. at 228.

¶ 10    Accordingly, the government may only involuntarily administer antipsychotic medication to a defendant for the purpose of rendering him competent to stand trial in cases "sufficiently exceptional to warrant [such an] extraordinary measure." *White*, 620 F.3d at 413.

¶ 11    To show that the case is sufficiently exceptional, the People must satisfy the four-part test articulated by the Supreme Court in *Sell*.[1]

¶ 12    First, the state must prove that important governmental interests are at stake. *Sell*, 539 U.S. at 180. The governmental

---

[1] This test applies only when involuntary administration of drugs is sought for the purpose of rendering the defendant competent to stand trial. *Sell v. United States*, 539 U.S. 166, 181 (2003). When the government seeks to involuntarily administer drugs to further other purposes, such as those "related to the individual's dangerousness" or those related to an individual's own interests "where refusal to take drugs puts his health gravely at risk," *id.* at 181-82, the test established in *People v. Medina*, 705 P.2d 961 (Colo. 1985), controls. "There are often strong reasons for a court to determine whether forced administration of drugs can be justified" under the *Medina* test "*before* turning to the trial competence question." *Sell*, 539 U.S. at 182.

interest in bringing to trial an individual accused of a serious crime is important. *Id.* Still, special circumstances may lessen the importance of that interest. For example, if the defendant has already been confined for a significant amount of time, for which he would receive credit toward any sentence ultimately imposed, the government's interest may be somewhat diminished. *Id.*

¶ 13 Second, the state must prove that involuntary medication will significantly further those interests. *Id.* at 181. The state proves this factor by showing that the medication (a) is substantially likely to render the defendant competent to stand trial and (b) is substantially unlikely to have side effects that will interfere with the defendant's ability to assist in his defense. *Id.*

¶ 14 Third, the state must prove that involuntary medication is necessary to further the governmental interests. *Id.* The state proves this factor by showing that (a) any alternative, less intrusive treatments are unlikely to achieve substantially the same results; and (b) there are no less intrusive means for administering the medication, such as an order to the defendant backed by the court's contempt power. *Id.*

¶ 15    And fourth, the state must prove that administration of the

drugs is medically appropriate — that is, in the patient's best

medical interests in light of his medical condition. *Id.*

¶ 16    Because involuntary administration of antipsychotic

medication is "a tool that must not be casually deployed," *United*

*States v. Chatmon*, 718 F.3d 369, 374 (4th Cir. 2013), the

government is held to a heightened burden and must prove each

factor by clear and convincing evidence, *United States v. Gomes*,

387 F.3d 157, 160 (2d Cir. 2004). "Clear and convincing evidence

means evidence which is stronger than a mere 'preponderance'; it is

evidence that is highly probable and free from serious or

substantial doubt." *Metro Moving & Storage Co. v. Gussert*, 914

P.2d 411, 414 (Colo. App. 1995).

¶ 17    We acknowledge that a different division of this court has

framed the *Sell* inquiry as an eight-part test. *Hardesty*, ¶¶ 7-14. In

that version of the test, factors two and three are stand-alone

factors, rather than conclusions derived from subsidiary findings.

In other words, the *Hardesty* division determined that the state

must prove that the involuntary medication will significantly further

the important governmental interest *and* that the medication is

7

substantially likely to render the defendant competent to stand trial *and* that the medication is substantially unlikely to have side effects that would interfere with the defendant's ability to participate in his defense. *Id.* at ¶¶ 8-10. Likewise, the division concluded that the state must prove that the involuntary medication is necessary to further the governmental interest *and* that an alternative treatment is unlikely to achieve substantially the same results *and* that there are no less intrusive means for administering the medication. *Id.* at ¶¶ 11-13.

¶ 18    The following chart illustrates the two different approaches:

| *Sell* | *Hardesty* |
|---|---|
| 1. Important governmental interests are at stake. | 1. The defendant is facing serious criminal charges. |
| 2. Involuntary medication will significantly further those interests, *meaning the following*: | 2. Involuntary medication will significantly further the state's interest in prosecution. |
| a. Administration of the drugs is substantially likely to render the defendant competent to stand trial; and | 3. Administration of the drugs is substantially likely to render the defendant competent to stand trial. |
| b. Administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist in his defense. | 4. Administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist in his defense. |

| | |
|---|---|
| 3. Involuntary medication is necessary to further those interests, *meaning the following*:<br>a. Any alternative, less intrusive treatments are unlikely to achieve substantially the same results; and<br>b. The district court considered less intrusive means for administering the drugs to the defendant.<br>4. Administration of the drugs is medically appropriate. | 5. Administration of the drugs is necessary to further the governmental interests.<br>6. The district court considered less intrusive means for administering the drugs to the defendant.<br>7. Any alternative, less intrusive treatments are unlikely to achieve substantially the same results.<br>8. Administration of the drugs is medically appropriate. |

¶ 19    But in our view, the second and third factors describe the conclusion drawn from the subsidiary findings.  *Sell* instructs, for example, that to grant the government's petition, the district court must "conclude" that involuntary medication will significantly further the governmental interests based on "find[ings]" that the medication will render the defendant competent and that it will not have deleterious side effects.  *Sell*, 539 U.S. at 181.  Thus, under our reading of *Sell*, the second and third factors are necessarily established upon proof by clear and convincing evidence of the subsidiary facts that underlie those factors.

¶ 20    To the extent the *Hardesty* division intended to impose some additional burden on the government under the second and third factors, we are unable to discern the nature of that burden or its derivation from *Sell*.  Accordingly, we elect to adhere to the test as articulated by the Supreme Court.  *See In re Estate of Becker*, 32 P.3d 557, 563 (Colo. App. 2000), *aff'd sub nom. In re Estate of DeWitt*, 54 P.3d 849 (Colo. 2002) (a division of the court of appeals is not obligated to follow the precedent established by another division).

¶ 21    Because we construe the test as comprising four factors, three of which are based on specific factual findings, we also disagree with the *Hardesty* division's articulation of the standard of review.  In our view, only the first factor — whether the government's asserted interest is sufficiently important — presents a legal question subject to de novo review.  *See Gomes*, 387 F.3d at 160.  The district court's findings with respect to the other *Sell* factors are factual in nature and are therefore subject to review for clear error.  *Id.*; *cf. Hardesty*, ¶¶ 15-17 (reviewing importance of governmental interest and whether medication will significantly advance the

interest under a de novo standard of review but applying clear error review to the remaining six factors).

## B. Application

¶ 22     This appeal illustrates the confusion that can arise from application of an eight-part test.

¶ 23     R.F. expressly concedes that the state proved by clear and convincing evidence that the governmental interest in bringing him to trial is sufficiently strong (*Sell* factor one) and that administration of the drugs is medically appropriate (*Sell* factor four).

¶ 24     He also concedes that the state proved that the medication is substantially likely to render him competent to stand trial and that the medication is substantially unlikely to have side effects that will interfere with his ability to participate in his defense. Under our application of the *Sell* test, he has therefore conceded factor two: that the involuntary administration of drugs will significantly further the important governmental interest at stake.

¶ 25     But following *Hardesty*, R.F. argues that the People failed to prove this second factor, which the *Hardesty* division interpreted as requiring some inquiry independent of whether the drugs are likely to restore the defendant to competency and whether the drugs are

unlikely to produce deleterious side effects. R.F. does not explain, though, what additional inquiry is required, or what additional evidence the People had to present, to prove *Hardesty*'s version of the second factor.

¶ 26 To be sure, a mere conclusory statement from the defendant's treating psychiatrist that the proposed medication is substantially likely to restore the defendant to competency is not sufficient. Because allowing "the government to meet its burden through generalized evidence alone would effectively allow it to prevail in every case involving the same condition or course of treatment" and involuntary medication is to be the exception rather than the rule, we require individualized evidence. *Watson*, 793 F.3d at 425. So instead of proof that the medications are generally effective, the People must demonstrate that the "proposed treatment plan, *as applied to this particular defendant*, is 'substantially likely' to render the defendant competent to stand trial." *United States v. Evans*, 404 F.3d 227, 241-42 (4th Cir. 2005); *see also United States v. Diaz*, 630 F.3d 1314 (11th Cir. 2011) (affirming the district court's order granting the government's petition where experts testified about relevant studies and applied data to the defendant's

condition); *United States v. Ruiz-Gaxiola*, 623 F.3d 684, 700 (9th Cir. 2010) (the government did not prove the second *Sell* factor where "the government experts rely on generalities and fail to apply their views to [the defendant's] condition with specificity"); *People v. Coleman*, 145 Cal. Rptr. 3d 329, 335 (Cal. Ct. App. 2012) (the government proved the second *Sell* factor with evidence that the "[m]edication successfully restored defendant's competence previously"); *State v. Barzee*, 177 P.3d 48, 77-78 (Utah 2007) (affirming the district court's involuntary medication order where doctors testified regarding their clinical experience treating other patients with the same condition and similar symptoms as the defendant).

¶ 27 However, we have no occasion to evaluate the sufficiency of the evidence regarding the likelihood that the medications will restore R.F. to competency, as he did not challenge the district court's finding that it would.

¶ 28 As for the argument regarding sufficiency of the evidence to support the third *Sell* factor, R.F. makes the same analytical error. He expressly concedes that the People proved by clear and convincing evidence that any alternative, less intrusive treatment is

unlikely to achieve substantially the same result as the antipsychotic medication and that there are no less intrusive means for administering the medication. Yet, he argues that the evidence was insufficient to establish that involuntary medication is necessary to further an important governmental interest. Again, he does not explain what additional showing is required to establish the third *Sell* factor.

¶ 29 Because we conclude that the People have met their burden to prove the second and third *Sell* factors by virtue of R.F.'s concession that the medication is substantially likely to restore him to competency, the medication is substantially unlikely to have side effects that will affect his ability to assist in his defense, no alternative treatment is likely to achieve the same results, and the court considered less intrusive means for administering the medication, we affirm the district court's order.

### III. Conclusion

¶ 30 The order is affirmed.

JUDGE RICHMAN and JUDGE TOW concur.