25CA0678 Peo in Interest of Pacheco 07-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0678
Pueblo County District Court No. 25MH30027
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Sarah Amy Pacheco,

Respondent-Appellant.

---

ORDER AFFIRMED

Division III
Opinion by JUDGE SCHOCK
Dunn and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 24, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1    Sarah Amy Pacheco appeals the district court's order authorizing staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to medicate her without her consent.  We affirm.

## I.    Background

¶ 2    Pacheco was admitted to the hospital after being found incompetent to proceed in a criminal case.  She was diagnosed with schizoaffective disorder, bipolar type.  Her symptoms included chronic psychosis (including hearing and responding to nonexistent voices) and episodes of mania (during which she needed little sleep and was high energy, impulsive, and easily angered).  After she yelled at and lunged at a staff member and then refused medication, the hospital started giving her emergency medication.

¶ 3    The People then filed a petition for authorization to medicate Pacheco involuntarily with olanzapine (Zyprexa), paliperidone (Invega), valproate (Depakote), and chlorpromazine (Thorazine).

¶ 4    At the hearing, Pacheco's treating psychiatrist testified that Pacheco's schizoaffective disorder, bipolar type, is a substantial disorder that grossly impairs her judgment and capacity to recognize reality or control behavior.  The psychiatrist testified that Pacheco does not have insight into her mental illness and does not

want to take the medications, even though she needs them. The psychiatrist also explained that Pacheco's condition had improved significantly since she began taking the medications, and he opined that, without them, she would experience a significant and likely long-term deterioration of her mental condition.

¶ 5 Pacheco also testified at the hearing. She confirmed that she does not believe she has a mental illness, does not want to take medication, and would not take any medication without a court order. She further testified that she experienced side effects from the medications, including headaches, stomach discomfort (including that her stomach feels full and empty at the same time), constant sleepiness during the day, and restlessness at night.

¶ 6 The district court granted the People's petition with respect to all but the Thorazine, which was proposed as a backup medication. In doing so, the court found that the psychiatrist had testified credibly and persuasively, and it adopted his opinions. As to the three medications it authorized, the court found that the People had met their burden of proving all four elements of the test set forth in *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985).

## II. Applicable Law and Standard of Review

¶ 7 A district court may order the involuntary administration of medication if the People prove by clear and convincing evidence that (1) the patient is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the patient causing serious harm to herself or others at the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment. *Id.*[1]

¶ 8 Application of the *Medina* test involves mixed questions of fact and law. *People v. Marquardt*, 2016 CO 4, ¶ 8. We defer to the district court's factual findings if they have record support and

---

[1] A different test applies when the state seeks to administer medication to a criminal defendant for the purpose of rendering them competent to stand trial. *See Sell v. United States*, 539 U.S. 166, 180 (2003); *People in Interest of R.F.*, 2019 COA 110, ¶¶ 10-15 & n.1. But although Pacheco was admitted to the hospital for the purpose of restoring her competency, the stated purpose of the medications was to prevent a significant, long-term deterioration in her mental condition. The parties therefore agree that the test from *People v. Medina*, 705 P.2d 961 (Colo. 1985), applies.

review its legal conclusions de novo. *Id.* When a patient challenges the sufficiency of the evidence supporting an involuntary medication order, we must affirm if the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. The testimony of the treating psychiatrist alone may suffice. *Id.* at ¶ 30.

## III. Analysis

¶ 9 Pacheco contests only the fourth *Medina* element — that her need for the medications is sufficiently compelling to override her bona fide and legitimate interest in refusing to take them. In assessing this element, the district court must first determine "whether the patient's refusal is bona fide and legitimate." *Medina*, 705 P.2d at 974. If it is, the court must then determine "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 10 The district court found that Pacheco's interest in avoiding the side effects she was experiencing was bona fide and legitimate. And Pacheco does not contest the district court's finding that the

medications are necessary to prevent a significant and likely long-term deterioration of her mental health condition. The question is therefore whether the evidence was sufficient to support the district court's conclusion that the latter consideration outweighed the former. We conclude that it was.

¶ 11 The district court found that, although Pacheco's concerns about side effects were bona fide, the side effects she described were "minimal" and "on the lower end" of the scale of side effects that patients can experience. Pacheco takes issue with that characterization, asserting that she described the side effects as "plaguing her at all hours of the day" and causing her "severe discomfort." But Pacheco did not testify that the side effects "plagu[ed]" her or that her discomfort was "severe." She gave no assessment of the *severity* of her symptoms at all, saying only that she experienced headaches, stomach discomfort, sleepiness, and restlessness. We discern no error in the district court's characterization of such symptoms as "minimal" and "lower end."

¶ 12 Moreover, the district court found that Pacheco's stomach discomfort could be mitigated through other medications — such as famotidine and Pepto-Bismol — but that she had not taken those

5

medications. That finding is supported by the psychiatrist's testimony that Pacheco had taken only two doses of famotidine, which must be consistently taken twice a day, and that she had not taken any Pepto-Bismol. The psychiatrist also testified that he had cut Pacheco's dose of Zyprexa in half to reduce her sedation. And the district court found, consistent with the psychiatrist's testimony, that there was a plan to take Pacheco off Zyprexa altogether in the future, which would reduce her overall side effects.

¶ 13 Pacheco points to the psychiatrist's testimony about other side effects that people *may* experience from the medications. But Pacheco does not assert that she has experienced any of those side effects, and her general concerns about potential *future* side effects do not undermine the district court's findings. Indeed, the district court found, with record support, that Pacheco was being monitored for more serious side effects — by testing her kidney functioning and liver enzymes — and the psychiatrist testified that Pacheco's lab work shows she is physically "quite healthy."

¶ 14 On the other side of the equation, Pacheco does not contest the district court's finding that the medications are necessary to prevent a significant and likely long-term deterioration in her

condition. The psychiatrist testified that Pacheco's schizoaffective disorder, bipolar type, is "a serious mental health problem," that she has shown significant improvement on the medications, and that, without the medications, she would revert to the severe symptoms she was experiencing when she was admitted to the hospital. The district court credited the psychiatrist's testimony, adopted his opinions, and made similar findings about the severity of Pacheco's condition, her improvement with the medications, and the likely deterioration of her condition without them.

¶ 15    Thus, we conclude that the evidence as a whole was sufficient to support the district court's finding that Pacheco's need for the medications was sufficiently compelling to override her bona fide and legitimate interest in avoiding the side effects she described.

## IV. Disposition

¶ 16    The order is affirmed.

JUDGE DUNN and JUDGE BROWN concur.