25CA1345 Peo in Interest of Perkins 10-02-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1345
Pueblo County District Court No. 25MH30061
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Jay Matthew Perkins,

Respondent-Appellant.

---

ORDER AFFIRMED

Division IV
Opinion by JUDGE SCHOCK
Harris and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 2, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     Respondent, Jay Matthew Perkins, appeals the district court order authorizing staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to medicate him involuntarily.  We affirm.

## I.     Background

¶ 2     Perkins was admitted to the hospital after being found incompetent to proceed in a criminal case.  He has been diagnosed with psychosis, not otherwise specified, and displays symptoms of paranoia, hallucinations, agitation, and assaultive behaviors.  Perkins has been admitted to the hospital twice before, and both times, his condition improved with court-ordered medications.

¶ 3     According to Perkins's treating psychiatrist, Dr. Hareesh Pillai, Perkins has exhibited "extreme aggression and agitation" toward staff during his most recent hospitalization.  For example, he kicked at security staff, threw a cup of liquid at a medical provider, and threatened and attempted to attack other patients.  He was placed on severe assault precautions and given emergency medications.

¶ 4     The People then petitioned for authorization to continue administering olanzapine (Zyprexa), chlorpromazine (Thorazine), and valproic acid (Depakote) to Perkins over his objection.

¶ 5    At an evidentiary hearing, Dr. Pillai testified, consistent with *People v. Medina*, 705 P.2d 961 (Colo. 1985), that (1) Perkins was incompetent to effectively participate in his treatment decisions; (2) the requested medications were necessary to prevent a significant and likely long-term deterioration in Perkins's condition and to prevent him from harming others; (3) there was no alternative less intrusive treatment; and (4) Perkins's need for the medication, and the risks of him not taking it, outweighed the risks of side effects.  Perkins testified that he had experienced side effects from the medications, including diarrhea, vomiting, and a bad mood.

¶ 6    The district court granted the petition.  It found that Dr. Pillai had testified "credibly and persuasively" and that the People had proved all four *Medina* elements by clear and convincing evidence.  In reaching this conclusion, the district court found that Perkins's testimony about the severity of his side effects was not credible.

II.    Applicable Law and Standard of Review

¶ 7    A district court may order the involuntary administration of medication if the People prove by clear and convincing evidence that (1) the patient is incompetent to effectively participate in the

treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the patient causing serious harm to himself or others at the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment.[1]  *Id.*

¶ 8     Application of the *Medina* test involves mixed questions of fact and law.  *People v. Marquardt*, 2016 CO 4, ¶ 8.  We defer to the district court's factual findings if they have record support and review its legal conclusions de novo.  *Id.*  When a patient challenges the sufficiency of the evidence supporting an involuntary medication order, we must affirm if the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support

---

[1] A different test applies when the state seeks to administer medication to a criminal defendant for the purpose of rendering them competent to stand trial.  *See Sell v. United States*, 539 U.S. 166, 180 (2003); *People in Interest of R.F.*, 2019 COA 110, ¶¶ 10-15, ¶ 11 n.1.  But the parties agree that the test from *People v. Medina*, 705 P.2d 961 (Colo. 1985), applies in this case because the purpose of the medication is to prevent harm to others and a significant, long-term deterioration in Perkins's mental condition.

the order.  *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13.  The

testimony of the treating psychiatrist alone may suffice.  *Id.* at ¶ 30.

### III.    Analysis

¶ 9      Perkins challenges the sufficiency of the evidence on only the

fourth *Medina* element — that his need for the requested

medications is sufficiently compelling to override his bona fide and

legitimate interest in refusing to take them.  Specifically, he argues

that the district court did not afford appropriate weight to his

interest in avoiding side effects, including nausea, vomiting,

diarrhea, a bad mood, and cardiac irregularities.  We disagree.

¶ 10     In assessing this element, a court must first determine

"whether the patient's refusal is bona fide and legitimate."  *Medina*,

705 P.2d at 974.  If it is, the court must then determine "whether

the prognosis without treatment is so unfavorable that the patient's

personal preference must yield to the legitimate interests of the

state in preserving the life and health of the patient placed in its

charge and in protecting the safety of those in the institution."  *Id.*

¶ 11     The district court found that, notwithstanding its concerns

with Perkins's credibility, Perkins had a bona fide and legitimate

concern in avoiding the potential side effects associated with the

4

medication. But it found that Perkins's prognosis without the medication was so unfavorable that his interest must yield to the state's interest in preserving his health and protecting others in the hospital. In making this determination, the court specifically highlighted the evidence of Perkins's "extreme aggressive behavior."

¶ 12    The record supports the district court's finding. Dr. Pillai testified that, without medication, Perkins's mental condition would significantly deteriorate so that he would be unable to control his behavior and become a danger to others. Dr. Pillai gave specific examples of Perkins's dangerous behavior while not on medication, including threatening and attempting to attack other patients, kicking at security staff, and throwing liquid at a medical provider.

¶ 13    Dr. Pillai also testified that, although Perkins reported side effects from the medication — including nausea, vomiting, diarrhea, and a bad mood — medical staff had not observed any signs of gastrointestinal symptoms. But to the extent Perkins was experiencing such side effects, they would likely resolve as he adjusted to the medication. And medical staff would continue to monitor Perkins for these and other side effects. As to the cardiac symptoms that Perkins had experienced while taking a *different*

antipsychotic medication in the past, Dr. Pillai testified that the requested medications were less likely to cause cardiac concerns.

¶ 14 Based on this testimony, the district court found that Perkins's need for treatment was sufficiently compelling to override his bona fide and legitimate interest in avoiding the side effects he described. Because there is sufficient evidence in the record to support that finding, we must uphold it. *See R.K.L.*, ¶ 13.

## IV. Disposition

¶ 15 The order is affirmed.

JUDGE HARRIS and JUDGE JOHNSON concur.