25CA1880 Peo in Interest of Zhu 03-12-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1880
Pueblo County District Court No. 25MH30091
Honorable Amiel Markenson, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Matthew Gene Zhu,

Respondent-Appellant.

ORDER AFFIRMED

Division I
Opinion by JUDGE MEIRINK
J. Jones and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 12, 2026

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     Matthew Gene Zhu appeals the district court's order authorizing staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to medicate him without his consent.  We affirm.

I.     Background

¶ 2     Zhu was admitted to the hospital in September 2025 after being found incompetent to proceed in a criminal case.  His symptoms included delusional ideation, disordered thinking, irritability, and aggression.  He was diagnosed with schizophrenia.

¶ 3     This was not Zhu's first admission to the hospital; he had previously been hospitalized for competency restoration from October 2023 to July 2024.  During that hospitalization, he was restored to competency after being treated with a court-ordered antipsychotic medication.

¶ 4     Following Zhu's readmission to the hospital in September 2025, he denied having a psychiatric illness and refused to take psychiatric medications.  However, he was started on emergency medications after getting into a physical altercation with another patient.  The State then petitioned the district court for authorization to medicate Zhu involuntarily with two antipsychotic

1

medications, risperidone (Risperdal or UZEDY) and Thorazine (chlorpromazine).

¶ 5     At the hearing on the petition, Zhu's psychiatrist at the hospital, Dr. Hareesh Pillai, and Zhu both testified. Dr. Pillai testified that Zhu's schizophrenia constitutes a substantial disorder that grossly impairs his judgment or capacity to recognize reality or control his behavior. Dr. Pillai explained that he was requesting authorization to treat Zhu with oral risperidone to be taken daily, and injectable Thorazine if Zhu refuses the oral risperidone. Dr. Pillai also explained that Zhu could eventually be transitioned from daily oral risperidone to UZEDY, the long-acting injectable form of risperidone. Dr. Pillai opined that the medications were necessary to effectively treat Zhu's schizophrenia, and without the medications, Zhu would experience a significant and likely long-term deterioration of his mental condition.

¶ 6     Zhu testified that he does not believe he has a mental illness, does not believe risperidone is benefitting him in any way, and would not take medication absent a court order. He also testified that he has experienced involuntary facial tremors or tics, nausea, and exhaustion in the hospital.

¶ 7    Following the testimony, the district court found that Dr. Pillai had testified credibly and persuasively, and it adopted Dr. Pillai's opinions.  The court then examined each of the four elements of the test from *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985), concluded that the State had met its burden of proving all four elements, and granted the petition.

## II.    Applicable Law and Standard of Review

¶ 8    The parties agree that the *Medina* test applies here.[1]  Under that test, a district court may authorize the involuntary administration of antipsychotic medication if the State demonstrates by clear and convincing evidence that

> (1) the patient is incompetent to effectively participate in the treatment decision;

---

[1] A different test applies to petitions to administer medication involuntarily for the purpose of restoring a defendant's competency in a criminal case.  *See People in Interest of R.F.*, 2019 COA 110, ¶¶ 10-15 & n.1 (discussing the test from *Sell v. United States*, 539 U.S. 166, 180 (2003)).  Although Zhu was initially admitted to the hospital for that purpose, the petition's stated purpose, and the district court's basis for granting the petition, was to prevent a significant and long-term deterioration in his mental condition.  This consideration is relevant to the second *Medina* element.  *See id.* at ¶ 11 n.1.

3

(2) the treatment with antipsychotic medication is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the patient causing serious harm to himself or others in the institution;

(3) a less intrusive treatment alternative is not available; and

(4) the patient's need for treatment with antipsychotic medication is sufficiently compelling to override any bona fide and legitimate interest he has in refusing treatment.

*Id.*

¶ 9 Application of the *Medina* test involves mixed questions of fact and law. *People v. Marquardt*, 2016 CO 4, ¶ 8. We defer to the district court's factual findings if they have record support, while we review the court's legal conclusions de novo. *Id.* Resolving conflicts in testimony and determining the credibility of the witnesses are matters solely within the province of the district court. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23.

### III. Analysis

¶ 10 Zhu does not contest the district court's ruling that the State met its burden of proving the third *Medina* element. However, he

challenges the sufficiency of the evidence supporting the court's rulings that the State met its burden of proving the first, second, and fourth *Medina* elements.

¶ 11    On a sufficiency challenge, we must determine whether the evidence, viewed as a whole and in the light most favorable to the State, is sufficient to support the district court's order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. The testimony of the physician seeking to administer treatment may be sufficient, without more, to satisfy the *Medina* test. *Id.* at ¶ 30.

### A.    The First *Medina* Element

¶ 12    The first *Medina* element requires the State to establish "the patient's incompetency to make treatment decisions." *Id.* at ¶ 32 (quoting *Medina*, 705 P.2d at 973). To find that the State did so, a district court must be satisfied that "the patient's mental illness has so impaired his judgment as to render him 'incapable of participating in decisions affecting his health.'" *People in Interest of Strodtman*, 293 P.3d 123, 132 (Colo. App. 2011) (quoting *Medina*, 705 P.2d at 973).

¶ 13    The district court found that Zhu has limited insight into his mental illness and is incompetent to effectively participate in the

5

treatment decision. In doing so, the court contrasted (1) Dr. Pillai's expert opinion that Zhu has schizophrenia and needs to be treated with antipsychotic medication, and (2) Zhu's testimony that he does not believe that he has a psychiatric illness and does not believe that he needs medication. In reconciling that conflicting testimony, the court specifically credited Dr. Pillai's testimony, thereby implicitly discrediting Zhu's contrary testimony.

¶ 14 It was the district court's role, not ours, to reconcile that conflicting evidence and to make that credibility determination. *See Ramsey*, ¶ 23. Given the district court's credibility determination, we conclude that Dr. Pillai's testimony was sufficient to show by clear and convincing evidence that the first *Medina* element was met. *See R.K.L.*, ¶¶ 13, 30. If credible evidence establishes that a patient has a psychiatric condition that requires treatment with antipsychotic medication, the patient's belief that he does not have a psychiatric condition and does not need medication shows that he is incompetent to effectively participate in the treatment decision. *See id.* at ¶¶ 6-7, 33 (affirming the finding that the patient was incompetent to effectively participate in the treatment decision because the psychiatrist testified that the patient had

schizophrenia, but the patient did not think he had a mental illness); *Strodtman*, 293 P.3d at 131-32 (affirming the finding that the patient was incompetent to effectively participate in the treatment decision because she did not believe she had a mental illness, had not embraced her need for medication, and had a history of noncompliance in taking medication).

¶ 15    Zhu's arguments on appeal are unpersuasive.  He first argues that he "demonstrated insight into his mental illness when he testified that he does not suffer from [s]chizophrenia" and "does not have delusions or hallucinations."  As explained above, Zhu's belief that he does *not* have schizophrenia is the very reason why he is incompetent to effectively participate in the decision on how to treat his schizophrenia.

¶ 16    Zhu also argues that Dr. Pillai admitted that Zhu "has some insight into his mental illness," citing Dr. Pillai's testimony that Zhu has "limited insight" into his mental illness because he "appears to understand" that he was hospitalized for competency restoration treatment.  But Zhu's mere knowledge of *why* he was hospitalized does not mean he is competent to effectively participate in the decision of *how* to treat his schizophrenia.

¶ 17    Finally, we disagree with Zhu's argument that the district court based its finding "almost exclusively" on his incompetence to participate in treatment decisions during his prior hospitalization from 2023 to 2024. The court's oral ruling instead shows that it primarily relied on the prior hospitalization as evidence that Zhu (1) had similar psychiatric symptoms at the beginning of both hospitalizations and (2) was successfully treated with an antipsychotic medication during the prior hospitalization. Zhu's condition and treatment during that recent hospitalization was certainly relevant to consider, but the court ruling shows that it did not base its finding "almost exclusively" on the prior hospitalization.

## B.    The Second *Medina* Element

¶ 18    Zhu also challenges the district court's finding that treating him with antipsychotic medication is necessary to prevent a significant and likely long-term deterioration in his mental health condition. However, in his opening brief, his sole argument on that issue is as follows: "Mr. Zhu testified that he does not have a mental illness or suffer from delusions or hallucinations. Therefore, Mr. Zhu will not deteriorate over time without medications." (Citation omitted.) But as explained above, the court specifically

credited Dr. Pillai's testimony that Zhu has schizophrenia and needs to be treated with antipsychotic medication. By doing so, it implicitly discredited Zhu's testimony that he does not have a mental illness and does not need medication, so we reject Zhu's reliance on his own testimony. *See Ramsey*, ¶ 23.

¶ 19    In his reply brief, Zhu asserts that "[t]here is no testimony indicating that [he] has experienced any deterioration since his last hospitalization," and that his "presentation [during his current hospitalization] was consistent with his prior hospitalization." We need not consider this argument made for the first time in Zhu's reply brief. *See People v. Duncan*, 2023 COA 122, ¶ 49 n.6. But regardless, Zhu's argument overlooks the evidence that he was released from the prior hospitalization in July 2024 because his competency had been restored but was readmitted to the hospital in September 2025 after again being found incompetent to proceed. This plainly shows deterioration between his two hospitalizations. Zhu's argument also overlooks Dr. Pillai's testimony that "[d]uring this hospital course, [Mr. Zhu] was described similarly to his last hospitalization *before he was put on medications*." (Emphasis added.) So Zhu was in a deteriorated state *at the beginning* of both

hospitalizations, but the evidence shows that he was restored to competency during the first hospitalization but then deteriorated after his release.

## C. The Fourth *Medina* Element

¶ 20     In analyzing the fourth *Medina* element, a court first determines "whether the patient's refusal [of treatment] is bona fide and legitimate." *Medina*, 705 P.2d at 974. If it is, the court then determines "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 21     On appeal, Zhu focuses on the first step of this test by emphasizing the facial tremors, nausea, and exhaustion he has been experiencing. The psychiatrist acknowledged that facial tremors can be a side effect of risperidone and testified that the treatment team was closely monitoring that to make sure that it doesn't worsen. The psychiatrist was not asked whether, and did not testify that, risperidone can cause nausea and exhaustion, and Zhu acknowledged that he did not know whether those are caused

10

by the medication. Nevertheless, the district court found that all three were bona fide and legitimate reasons for Zhu refusing to take risperidone voluntarily. We, too, will assume they are bona fide and legitimate.

¶ 22 However, in terms of the second part of the test, Zhu's opening brief makes only the general argument that the court "erred in finding Mr. Zhu's need for treatment outweighed" his interests in not taking medication.

¶ 23 We discern no error. The district court emphasized the severity of Zhu's condition when not treated with antipsychotic medication, including his delusions, irritability, aggression, and thoughts of wanting to harm or kill people. As an example, during Zhu's prior hospitalization, he harbored the belief that people had committed crimes against him long ago, and he expressed the desire for retribution against them, including wanting to "take off their body parts" and "rip out his eyeballs." Particularly concerning, he expressed the belief that a hospital staff member was involved with the people who had harmed him. But the district court found, with record support, that after Zhu's successful treatment during his prior hospitalization, he verbalized an

11

understanding that his beliefs about those prior crimes were delusional. However, upon Zhu's readmission to the hospital in September 2025, he was harboring that same belief about the prior crimes committed against him and expressing the same desire to harm or kill those responsible.

¶ 24    Given the severity of Zhu's condition, we conclude that the district court did not err by finding that his need for treatment with antipsychotic medication is sufficiently compelling to override his interests in refusing treatment.

## IV.    Disposition

¶ 25    The order is affirmed.

JUDGE J. JONES and JUDGE LUM concur.