26CA0267 Peo in Interest of Wolfe 05-21-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 26CA0267
Pueblo County District Court No. 25MH30072
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Elliot Wolfe,

Respondent-Appellant.

---

ORDER AFFIRMED

Division A
Opinion by JUDGE TAUBMAN*
C.J. Román, and Martinez*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 21, 2026

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Elliot Wolfe appeals the district court's order authorizing staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to medicate him without his consent.  We affirm.

## I.     Background

¶ 2     Wolfe was admitted to the hospital in July 2025 after being found incompetent to proceed in two criminal cases.  His symptoms included pressured speech, agitation, moodiness, disorganized thinking, and making delusional statements.  Wolfe was started on emergency medications after he began screaming and making threatening statements to, and physically posturing at, staff members.  He was diagnosed with an unspecified mood disorder.

¶ 3     In August 2025, the district court granted the People's petition for authorization to involuntarily medicate Wolfe with Zyprexa (olanzapine) and Thorazine (chlorpromazine), both antipsychotic medications; as well as Depakote (valproic acid), a mood-stabilizing medication.  On appeal, a division of this court affirmed.  *See People v. Wolfe*, (Colo. App. No. 25CA1501, Nov. 13, 2025) (not published pursuant to C.A.R. 35(e)).

1

¶ 4    In January 2026, the People again petitioned the district court for authorization to involuntarily medicate Wolfe, this time requesting only Zyprexa and Depakote.

¶ 5    At the hearing on the petition, Wolfe's psychiatrist at the hospital, Dr. Paul Mattox, and Wolfe both testified.  Dr. Mattox testified that Wolfe's unspecified mood disorder, which Dr. Mattox described as "severe," constituted a substantial disorder that impaired Wolfe's judgment or capacity to recognize reality or control his behavior.  While discussing Wolfe's symptoms, Dr. Mattox described two of Wolfe's delusional beliefs: that his national birth certificate was being destroyed and that his public defender was a Jehovah's Witness.  Dr. Mattox described that Wolfe's condition had improved on the medications, and opined that, without the medications, Wolfe would experience a significant, likely long-term deterioration of his mental condition.  He also testified that Wolfe had been experiencing hand tremors, which could be caused by Depakote, but that he could take propranolol to decrease the tremors.

¶ 6    Wolfe testified that he did not believe that he had a mental illness and did not need medication, explaining that "[t]heir

2

medications only screw things up." But he also testified that he was willing to take Zyprexa and Depakote voluntarily "if [he] feel[s] it's necessary," explaining that he is "old enough and know[s] enough to know when [he] need[s] to take medication and when [he doesn't]." He clarified that Zyprexa was not causing him any side effects, but that he preferred a different medication than Depakote because of his hand tremors.

¶ 7    Following the testimony, the district court found that Dr. Mattox had testified credibly and persuasively, and it adopted Dr. Mattox's opinions. The court also specifically found that Wolfe's testimony that he would take the medications voluntarily if they weren't court-ordered was not credible. The court then examined each of the four elements of the test from *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985), concluded that the People had met their burden of proving all four elements, and granted the petition.

II.    Applicable Law and Standard of Review

¶ 8    The parties agree that the *Medina* test applies here. Under that test, a district court may authorize the involuntary administration of antipsychotic medication if the People demonstrate by clear and convincing evidence that

3

(1) the patient is incompetent to effectively participate in the treatment decision;

(2) the treatment with antipsychotic medication is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the patient causing serious harm to himself, herself, or others in the institution;

(3) a less intrusive treatment alternative is not available; and

(4) the patient's need for treatment with antipsychotic medication is sufficiently compelling to override any bona fide and legitimate interest the patient has in refusing treatment.[1]

¶ 9 Application of the *Medina* test involves mixed questions of fact and law. *People v. Marquardt*, 2016 CO 4, ¶ 8, 364 P.3d 499, 502. We defer to the district court's factual findings if they have record

---

[1] A different test applies to petitions to administer medication involuntarily for the purpose of restoring a defendant's competency in a criminal case. *See People in Interest of R.F.*, 2019 COA 110, ¶¶ 10-15 & n.1 (discussing the test from *Sell v. United States*, 539 U.S. 166, 180 (2003)). Although Wolfe was initially admitted to the hospital for that purpose, the petition's stated purpose, and the district court's basis for granting the petition, was to prevent a significant and long-term deterioration in his mental condition. This consideration is relevant to the second *Medina* element. *See id.* at ¶ 11 n.1.

support, while we review the court's legal conclusions de novo. *Id.*
Resolving conflicts in testimony and determining the credibility of
the witnesses are matters solely within the province of the district
court. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23, 541 P.3d
1198, 1204.

## III. Analysis

¶ 10 Wolfe does not contest the district court's ruling that the
People met their burden of proving the first and third *Medina*
elements. However, he challenges the sufficiency of the evidence
supporting the court's rulings that the People met their burden of
proving the second and fourth *Medina* elements.

¶ 11 On a sufficiency challenge, we must determine whether the
evidence, viewed as a whole and in the light most favorable to the
People, is sufficient to support the district court's order. *People in
Interest of R.K.L.*, 2016 COA 84, ¶ 13, 412 P.3d 827, 832. The
testimony of the physician seeking to administer treatment may be
sufficient, without more, to satisfy the *Medina* test. *Id.* at ¶ 30, 412
P.3d at 834.

## A. The Second *Medina* Element

¶ 12 The district court found that the medications were necessary to prevent a significant and likely long-term deterioration in Wolfe's mental condition (it did not find that they were necessary to protect the safety of anyone at the hospital).

¶ 13 In determining whether medication is necessary to prevent a significant and likely long-term deterioration in a patient's mental condition, a court "should focus on the nature and gravity of the patient's illness, the extent to which the medication is essential to effective treatment, the prognosis without the medication, and whether the failure to medicate will be more harmful to the patient than any risks posed by the medication." *Medina*, 705 P.2d at 973.

¶ 14 During its oral ruling, the district court specifically discussed each of those factors. In terms of the nature and gravity of Wolfe's illness, the court credited Dr. Mattox's testimony that Wolfe's illness was severe, and it specifically discussed the evidence that (1) in jail, before being admitted to the hospital, Wolfe spat and cursed at officers, threatened staff, and smeared feces in his cell; and (2) upon Wolfe's admission to the hospital, he spoke nonsensically and made delusional statements. Regarding the extent to which the

6

medications were essential to effective treatment, the court focused on the evidence of Wolfe's improvement in no longer smearing feces and being less intrusive toward others. In terms of Wolfe's prognosis without the medication, the court highlighted Dr. Mattox's testimony that if Wolfe were to stop taking the medications, his condition would deteriorate back to his condition in the jail and on his admission to the hospital. And finally, on the issue of whether the failure to medicate would be more harmful to the patient than any risks posed by the medication, the court acknowledged that Wolfe was experiencing the side effect of hand tremors and that Depakote could cause that, but emphasized that Wolfe could take propranolol to help remedy that and the hospital could continue to monitor that side effect. Dr. Mattox's testimony, which the district court credited, supports the court's finding that the medications were necessary to prevent a significant and likely long-term deterioration in Wolfe's mental condition. *See Marquardt,* ¶ 8; *Ramsey,* ¶ 23; *R.K.L.,* ¶¶ 13, 30.

¶ 15     Wolfe argues that the district court erred regarding this *Medina* element because the evidence showed two ways in which he had not improved on the medications, and, thus, the medications

were not necessary. First, he emphasizes that he continued to express delusional beliefs that his birth certificate had been destroyed and that his public defender was a Jehovah's Witness; and second, he emphasizes that he continued to experience agitation. However, the district court recognized that Wolfe had not improved in terms of expressing those delusional beliefs. Instead, the court based its finding that the medications were necessary on Wolfe's demonstrated improvement in not smearing feces and in not behaving intrusively with others. Regarding agitation, Dr. Mattox specifically testified, "[H]e remains agitated, but he has not been making any threats or physically posturing" toward people at the hospital. Here, too, the court relied not on Wolfe's continued agitation but on his improvement in not behaving intrusively toward others.

### B. The Fourth *Medina* Element

¶ 16   In analyzing the fourth *Medina* element, a court first determines "whether the patient's refusal [of treatment] is bona fide and legitimate." *Medina*, 705 P.2d at 974. If it is, the court then determines "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the

legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 17    The district court found that Wolfe had two bona fide and legitimate reasons for not taking the medications: avoiding hand tremors, which can be caused by Depakote; and avoiding hyponatremia, which was briefly mentioned in Dr. Mattox's affidavit as the reason Wolfe was on a fluid restriction.  However, the court reincorporated its findings on the second *Medina* element and concluded that Wolfe's prognosis without the medications was so unfavorable that Wolfe's aforementioned interests must yield to the hospital's interest in protecting his life and health by treating him with the medications.

¶ 18    On appeal, Wolfe challenges the district court's ruling on the fourth *Medina* element by again emphasizing his hand tremors, as well as one other interest — his prior hernia surgery — that he suggests was a bona fide and legitimate reason to refuse the medications.  However, Dr. Mattox testified that Wolfe previously had hernia surgery, but when Dr. Mattox was asked whether Depakote could affect Wolfe's stomach or his prior hernia, he

responded that "stomach irritation, upset, diarrhea, are certain potential side effects" of the Depakote, but that he was "not aware of any literature, reports or evidence that due to a prior hernia repair that those side effect risks are increased." The district court did not make any clear finding whether Wolfe had a legitimate and bona fide interest in not taking the medications because of his prior hernia surgery.

¶ 19 Without any finding by the district court regarding the hernia surgery, we simply note that Wolfe's argument on appeal regarding having a bona fide and legitimate interest related to his hernia surgery is not persuasive and is not supported by the evidence. Leaving then only the hand tremors that he advances on appeal as to the fourth *Medina* element, we conclude that the district court's findings, and the evidence supporting them, on the second *Medina* element, as discussed in Part III.A above, also lead us to conclude that the court did not err in finding that the People had sufficiently proven the fourth *Medina* element.

## IV. Disposition

¶ 20 The order is affirmed.

CHIEF JUDGE ROMÁN and JUSTICE MARTINEZ concur.