25CA1986 Peo in Interest of Kazakov 12-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1986
Pueblo County District Court No. 25MH30092
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Filipp Kazakov,

Respondent-Appellant.

---

ORDER AFFIRMED

Division A
Opinion by JUDGE HAWTHORNE*
Román, C.J., and Martinez*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 24, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Respondent, Filipp Kazakov, appeals the district court's order authorizing the involuntary administration of antipsychotic medications for the purpose of restoring him to competency to stand trial in criminal cases.  We affirm.

## I.     Background

¶ 2     In two pending criminal cases, the prosecution charged Kazakov with serious felonies and one misdemeanor.  The district court in those cases ordered a competency evaluation, and Kazakov was found incompetent to stand trial.  He was ordered to undergo competency restoration.  Over the course of seven years, Kazakov was evaluated six times and found competent three times and incompetent three times.

¶ 3     Most recently, in July 2025, Kazakov was found incompetent and was again transferred to the Colorado Mental Health Hospital in Pueblo (CMHHIP).  While there, Kazakov's supervising physician, Dr. Paul Mattox, diagnosed Kazakov with a delusional disorder.  Kazakov refused to take the medications prescribed to address the disorder.

¶ 4     In September 2025, the People filed this case under section 16-8.5-112, C.R.S. 2025, seeking permission to involuntarily

1

administer antipsychotic medications to Kazakov and to monitor him for potential side effects. Specifically, the petition sought authority to administer Risperdal orally and, alternatively, to administer Zyprexa intramuscularly if Kazakov refused to take the Risperdal.

¶ 5 The district court held an evidentiary hearing on the petition, at which Dr. Mattox and Kazakov testified. The court found Dr. Mattox's testimony credible and persuasive. The court concluded that the People had met their burden to show that the administration of medication was necessary to advance the state's interest in restoring Kazakov to competency. Specifically, the court found by clear and convincing evidence that

- Kazakov suffers from a delusional disorder;

- he has no insight into his mental illness and is incapable of making informed treatment decisions;

- prosecuting the serious crimes with which he is charged serves an important governmental interest;

- he has experienced a lengthy confinement in an institution and participated in many evaluations;

- based on Dr. Mattox's explanation of how the requested medications work, there is nothing novel or experimental about the medications and they are substantially likely to render Kazakov competent to stand trial;

- the medications are substantially unlikely to have side effects that would interfere significantly with Kazakov's ability to assist his counsel during trial;

- less intrusive treatments are unlikely to achieve substantially the same result; and

- administering the medication in this case is medically appropriate and in Kazakov's best medical interest considering his condition.

¶ 6 Therefore, the court granted the People's petition.

## II. Analysis

¶ 7 Kazakov contends that the district court's decision is not supported by sufficient evidence. We disagree.

## A. Applicable Law

¶ 8 The United States Supreme Court has established a four-part test for determining when a state may involuntarily administer antipsychotic medication to restore a criminal defendant's

competency. *See Sell v. United States*, 539 U.S. 166, 180-81 (2003); *People in Interest of R.F.*, 2019 COA 110, ¶ 21. The state must prove each factor by clear and convincing evidence. *R.F.*, ¶ 16.

¶ 9     First, there must be important governmental interests at stake. *Sell*, 539 U.S. at 180; *R.F.*, ¶ 12.

¶ 10     Second, administering involuntary medication must significantly further the important governmental interests. *Sell*, 539 U.S. at 180; *R.F.*, ¶ 13. The state satisfies this factor by showing that (1) administering the medication is substantially likely to restore the defendant's competency and (2) the medication is substantially unlikely to have side effects that will interfere with the defendant's ability to assist in his defense. *Sell*, 539 U.S. at 181; *R.F.*, ¶ 13.

¶ 11     Third, the involuntary medication must be necessary to further the government's interests. *Sell*, 539 U.S. at 181; *R.F.*, ¶ 14. The state satisfies this factor by showing that (1) any less intrusive treatment alternatives are unlikely to achieve substantially the same results and (2) less intrusive means for administering the medication were considered. *Sell*, 539 U.S. at 181; *R.F.*, ¶ 14.

¶ 12    Fourth, administering the treatment must be medically appropriate — that is, in the defendant's best medical interests in light of his medical condition.  *Sell*, 539 U.S. at 181; *R.F.*, ¶ 15.

¶ 13    Only the first factor — whether the government's asserted interest is sufficiently important — presents a legal question that we review de novo.  *R.F.*, ¶ 21.  The district court's findings with respect to the other factors are factual in nature and, therefore, are subject to review for clear error.  *Id.*

## B.    Discussion

¶ 14    Kazakov argues that the People did not prove *Sell*'s second element with sufficient evidence.  We disagree.

¶ 15    Under the second factor, a court must consider whether involuntary medication will significantly further the government's important interests.  As noted, relevant to this issue are whether administering the medication is substantially likely to restore the defendant's competency and whether the medication is substantially unlikely to have side effects interfering with the defendant's ability to assist in his defense.  *Sell*, 539 U.S. at 181; *R.F.*, ¶ 13.

¶ 16    Dr. Mattox was qualified and accepted without objection as an expert in the field of clinical psychiatry.  Based on his contact with Kazakov as his supervising physician, his review of Kazakov's records, and his experience in the field, Dr. Mattox testified that it would be unlikely that Kazakov's competency would be restored without the use of antipsychotic medication and that he believed that the use of such medications was substantially likely to render Kazakov competent.  Dr. Mattox also discussed potential side effects of Risperdal and Zyprexa, concluding that they would not inhibit Kazakov's ability to assist his counsel during trial and noting that CMHHIP would monitor his condition and prescribe additional medications to neutralize any side effects as necessary.

¶ 17    Dr. Mattox testified that in the past Kazakov had taken antipsychotic medications for only six days on an emergency basis.  Accordingly, he explained that Kazakov had "never had an adequate trial of an antipsychotic medication."  He opined that the antipsychotic medications would "work to decrease the intensity" of Kazakov's delusional beliefs and hopefully decrease them to a point where he could "engage[] in more reality-based conversations."  He testified that the antipsychotic medications actually "help people

communicate more effectively." Finally, Dr. Mattox said that administering these medications was "medically appropriate and in the best medical interests" of Kazakov and that the failure to do so would be more harmful than any potential risk posed by the medication.

¶ 18    In concluding that the use of involuntary medication was substantially likely to render Kazakov competent to stand trial, the district court relied on the testimony of Dr. Mattox, which the court found credible and persuasive.

¶ 19    Nonetheless, Kazakov contends that Dr. Mattox's testimony constituted generalized evidence rather than individualized evidence and, thus, was insufficient under *R.F.* As discussed in *R.F.*, ¶ 26, the People must demonstrate that the proposed treatment plan, as applied to the particular defendant, is substantially likely to render the defendant competent to stand trial. We conclude that the evidence here was sufficiently specific to permit the district court to rely on it.

¶ 20    The diagnosis and proposed treatment offered by Dr. Mattox were based on his particular interactions with Kazakov, his medical experience, and his review of Kazakov's medical records. The fact

that Dr. Mattox made statements regarding the general efficacy of certain antipsychotic drugs based on his experience does not dissuade us. So long as the doctor's medical opinion is based on an individualized assessment of the particular defendant's condition, the doctor's testimony is sufficient. *See State v. Barzee*, 2007 UT 95, ¶¶ 90-95 (affirming the district court's involuntary medication order where doctors testified about their clinical experience treating other patients with the same condition and similar symptoms as the defendant), *cited with approval in R.F.*, ¶ 26; *see also United States v. Diaz*, 630 F.3d 1314, 1333-36 (11th Cir. 2011) (affirming the district court's order granting the government's petition where experts testified about relevant studies and applied data to the defendant's condition), *cited with approval in R.F.*, ¶ 26.

¶ 21 We are also unpersuaded by Kazakov's contention that the district court erred by rejecting his testimony, and crediting Dr. Mattox's testimony, about the proposed medication's potential side effects. Again, Dr. Mattox discussed the potential side effects of Risperdal and Zyprexa; he testified that, in his experience, any side effects caused by these medications would not significantly interfere with Kazakov's ability to assist counsel with his defense at trial and

8

in fact would help him to communicate more effectively. He also said that Kazakov's symptoms would be monitored by nursing staff on a daily basis and that they would prescribe additional medications to neutralize side effects if necessary.

¶ 22    We acknowledge that Kazakov testified about the side effects he experienced when the antipsychotic medications were administered to him on an emergency basis. These side effects included not feeling in control, like he was dying, and "almost equal to suicide" because his head was in the wrong place, and trouble breathing. However, Dr. Mattox testified that Kazakov's medical records indicated that during those six days he took the antipsychotic medications, Kazakov generally denied side effects and at most reported that he felt tired and the medications "slowed him down." And he also noted that the more severe side effects Kazakov testified about were not documented in his medical records.

¶ 23    It is the district court's province to resolve these factual conflicts, and it found Dr. Mattox more persuasive on this point. *See People in Interest of Uwayezuk*, 2023 COA 69, ¶ 57 (leaving to

the fact finder the resolution of conflicts in the testimony and the determination of the witnesses' credibility).

¶ 24    Because the district court's decisions are supported by the record, we will not disturb them. *People in Interest of A.J.L.*, 243 P.3d 244, 255 (Colo. 2010) (noting where ample evidence in the record supports the district court's findings and conclusions, the appellate court may not substitute its judgment for the district court's).

## III.    Disposition

¶ 25    The order is affirmed.

CHIEF JUDGE ROMÁN and JUSTICE MARTINEZ concur.