25CA1582 Peo in Interest of Horstmann 02-05-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1582
Pueblo County District Court No. 25MH30076
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Megan Christine Horstmann a/k/a Horstman,

Respondent-Appellant.

---

ORDER AFFIRMED

Division V
Opinion by JUDGE LIPINSKY
Tow and Martinez*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 5, 2026

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Megan Christine Horstmann, also known as Horstman, appeals the district court's order authorizing staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to medicate her without her consent.  We affirm.

I.    Background

¶ 2    Horstmann was admitted to the hospital in July 2025 after she was found incompetent to proceed in a criminal case.  Her symptoms included chronic psychosis, delusions, episodes of mania and depression, talking to unseen others, and irritability. Horstmann was diagnosed with schizoaffective disorder, bipolar type.  She refused to take medication to treat her mental health disorder, however.  After a physical altercation in which she hit, kicked, and spit at hospital staff, she was started on emergency medications.  The State petitioned the district court for authorization to medicate Horstmann involuntarily with two antipsychotic medications, Zyprexa (olanzapine) and Haldol (haloperidol).

¶ 3    At the hearing on the petition, which was conducted three weeks after Horstmann's admission to the hospital, her psychiatrist at the hospital testified that her schizoaffective disorder, bipolar

type, constitutes a substantial disorder that grossly impairs Horstmann's judgment or capacity to recognize reality or control her behavior. The psychiatrist explained that he was requesting authorization to administer up to 80 milligrams of Zyprexa per day, an antipsychotic medication, orally or intramuscularly, and, when needed, Haldol, another antipsychotic medication, orally up to 40 milligrams per day. He reported that Horstmann had already shown improvement on 30 milligrams of Zyprexa per day and that, in addition to its antipsychotic effect, it had stabilized her mood.

¶4 The psychiatrist also described Horstmann's deterioration when not on antipsychotic medication, explaining that she had been through twenty years of hospitalizations and bipolar episodes, and was living on the street when she was arrested ten months before her hospitalization. He also reported that, during the competency examination in her criminal case, she said that she could hear radio waves from the CIA and FBI.

¶5 Horstmann testified that her mental health disorders were "paranormal schizo" and "paranormal nympho" and said that her "paranormal schizo" allows her to "hear those who have passed over." Her testimony on direct examination primarily consisted of

2

descriptions of the side effects she had experienced when taking Zyprexa, as well as some of her underlying medical conditions. On cross-examination, she asserted that she was the founder of the hospital and that she had created "HIPAA" (presumably referring to the Health Insurance Portability and Accountability Act).

¶ 6 Following Horstmann's testimony, the district court found that the psychiatrist had testified credibly and persuasively, and it adopted his opinions. The court then examined each of the four elements of the test from *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985); concluded that the State had met its burden of proving all four of the *Medina* elements; and granted the petition.

## II.    Applicable Law and Standard of Review

¶ 7 The parties agree that the *Medina* test applies. Under that test, a district court may authorize the involuntary administration of medication if the State demonstrates by clear and convincing evidence that

(1)    the patient is incompetent to effectively participate in the treatment decision;

(2)    the treatment by antipsychotic medication is necessary to prevent a significant and likely long-term deterioration in

3

the patient's mental health condition or to prevent the likelihood of the patient causing serious harm to herself or others in the institution;

(3) a less intrusive treatment alternative is not available; and

(4) the patient's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment.

*Id.* (The test from *Sell v. United States*, 539 U.S. 166, 180-81 (2003), applies to petitions to administer medication involuntarily for the purpose of rendering a defendant competent to stand trial. *See People in Interest of R.F.*, 2019 COA 110, ¶¶ 10-15, ¶ 11 n.1, 451 P.3d 1238, 1241-42, 1241 n.1. Although Horstmann was initially admitted to the hospital for that purpose, the State filed the petition to prevent a significant and long-term deterioration in her mental condition and to prevent her from causing serious harm to others at the hospital. These considerations are relevant to the second *Medina* element. *See id.* at ¶ 11 n.1, 451 P.3d at 1241 n.1.

¶ 8 Application of the *Medina* test involves mixed questions of fact and law. *People v. Marquardt*, 2016 CO 4, ¶ 8, 364 P.3d 499, 502. We defer to the district court's factual findings if they have record

support, while we review the court's legal conclusions de novo. *Id.* Resolving conflicts in testimony and determining the credibility of the witnesses are matters solely within the province of the district court. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23, 541 P.3d 1198, 1204.

### III. Analysis

¶ 9　　Horstmann does not expressly contest the district court's rulings that the State met its burden of proving the first, second, and third *Medina* elements. However, she challenges the sufficiency of the evidence supporting the court's ruling on the fourth *Medina* element — that her need for the medications is sufficiently compelling to override any bona fide and legitimate interest she has in refusing to take them voluntarily. In analyzing the fourth *Medina* element, a court first determines "whether the patient's refusal is bona fide and legitimate." *Medina*, 705 P.2d at 974. If it is, the court then determines "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 10    On a sufficiency challenge, we must determine whether the evidence, viewed as a whole and in the light most favorable to the State, is sufficient to support the district court's order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13, 412 P.3d 827, 832. The testimony of the physician seeking to administer treatment may be sufficient, without more, to satisfy the *Medina* test. *Id.* at ¶ 30, 412 P.3d at 834.

¶ 11    The district court found that, even if the "litany" of reasons Horstmann gave for not wanting to take the medications were all bona fide and legitimate, her need for the medications was nonetheless sufficiently compelling to override those interests. Given that the district court credited the psychiatrist's testimony, and viewing the evidence as a whole and in the light most favorable to the State, we discern no error in the district court's conclusion that the State had proved the fourth *Medina* element by clear and convincing evidence. *See Ramsey*, ¶ 23, 541 P.3d at 1204; *R.K.L.*, ¶ 13, 412 P.3d 827, 832.

¶ 12    Like the district court, we assume that all the interests and concerns that Horstmann expressed at the hearing were bona fide and legitimate.

6

¶ 13    Nevertheless, we conclude that the State presented clear and convincing evidence that Horstmann's need for treatment is sufficiently compelling and that her prognosis without treatment is so unfavorable that the district court properly overrode her interests in not taking the medications. We noted above the substantial evidence of Horstmann's compelling need for treatment: her chronic psychosis, delusions, episodes of mania and depression, talking to unseen others, irritability, and significant deterioration when not taking antipsychotic medication. In addition, as explained above, the psychiatrist testified that the administration of 30 milligrams of Zyprexa per day had already led to significant improvement for Horstmann.

¶ 14    We next weigh Horstmann's arguments regarding her interests in not taking the medications against her compelling need for treatment. First, she highlights her testimony regarding the side effects she said she experienced when taking Zyprexa, including tremors, rapid speech, and sleepwalking. The district court found that she experienced tremors, but that medications can neutralize them. The psychiatrist testified that tremors are a possible side

effect of Haldol but that medications such as Cogentin "can reverse that."

¶ 15    In addition, Horstmann testified that Zyprexa sped up her speech, caused her to "word vomit," and made it harder for her to make sense speaking.  In contrast, the psychiatrist testified that Zyprexa had calmed Horstmann down "pretty quickly" and had helped her organize her thought processes.  He explained that Zyprexa typically causes the speech of manic patients to be "more organized to the outside world."  Horstmann also highlights her testimony regarding her preexisting conditions, such as arrhythmia, neuropathy, and fibromyalgia, which she said Zyprexa "exacerbates" or "accentuates."  The psychiatrist, however, explained that Hortsmann did not have a preexisting heart issue — a recent EKG was normal — or neuropathy.  In addition, the psychiatrist said that even if Hortsmann had those conditions, Zyprexa would not negatively affect them.  Significantly, the district court credited this testimony.  Finally, Horstmann accuses the psychiatrist of not obtaining her past medical records, arguing that "[w]ithout a complete medical history, it is impossible to evaluate the potential harm to [her] health accurately."  We reject that

argument because, when asked at the hearing whether he had obtained Horstmann's past medical records to assess whether she had underlying health conditions, the psychiatrist responded, "Not yet. We're waiting — she has to sign releases for us to get any of these records, unfortunately."

¶ 16 For these reasons, Horstmann's arguments on appeal concerning her interests in not taking the requested medications are not sufficiently persuasive to show that the district court erred by finding that those interests were outweighed by her compelling need for treatment with Zyprexa and Haldol.

## IV. Disposition

¶ 17 The order is affirmed.

JUDGE TOW and JUSTICE MARTINEZ concur.