26CA0510 Peo in Interest of Binford 06-18-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 26CA0510
Pueblo County District Court No. 26MH30021
Honorable Amiel Markenson, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Brian Binford,

Respondent-Appellant.

ORDER AFFIRMED

Division IV
Opinion by JUDGE LUM
Welling and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 18, 2026

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     Brian Binford appeals the district court's order authorizing staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to medicate him without his consent.  We affirm.

## I.     Background

¶ 2     Binford was admitted to the hospital in February 2026 after being found incompetent to proceed in four criminal cases.  His symptoms included delusions, response to internal stimuli, thought disorganization, disinhibition, impulsivity, agitation, and assaultive behavior.  He was diagnosed with unspecified bipolar disorder.

¶ 3     This wasn't the first time that Binford was admitted to the hospital for competency restoration.  When he was previously admitted in December 2024, he had nearly identical symptoms.  But after being treated with the antipsychotic medication Zyprexa (olanzapine) and the mood-stabilizing medication Depakote (valproic acid) for several months, he was restored to competency and released.

¶ 4     Upon Binford's readmission to the hospital in February 2026, he began fighting, kicking, and spitting at staff members, and he was placed in seclusion and restraint and treated with emergency medications.  The same month, the People petitioned the district

1

court for authorization to involuntarily medicate Binford with the antipsychotic medications Zyprexa and Haldol (haloperidol), the mood stabilizer Depakote, and the anxiolytic benzodiazepine medication Ativan (lorazepam).

¶ 5     At the hearing on the petition, an official at the hospital reported that Binford had refused to attend the hearing, and Binford's counsel then waived Binford's appearance. The only testifying witness at the hearing was Binford's psychiatrist at the hospital, Dr. Hareesh Pillai.

¶ 6     Dr. Pillai testified that Binford's unspecified bipolar disorder, which Dr. Pillai described as "severe," constitutes a substantial disorder that grossly impairs Binford's judgment or capacity to recognize reality or to control his behavior. He testified that the requested medications were necessary to prevent both (1) a significant and likely long-term deterioration in Binford's bipolar disorder and (2) the likelihood of Binford causing serious harm to others in the hospital. Dr. Pillai explained that he planned to treat Binford with Zyprexa and Depakote because those two medications had been effective in treating Binford during his previous hospital stay in 2024-2025. He also explained that he was requesting

2

Ativan because Binford was frequently being treated with that for his agitation. Finally, he explained that he was requesting the injectable medication Haldol as an alternative to Depakote because Binford frequently refused to take Depakote orally.

¶ 7 Following Dr. Pillai's testimony, the district court found that he had testified credibly and persuasively, and it adopted his opinions. The court then examined each of the four elements of the test from *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985), concluded that the People had met their burden of proving all four elements, and granted the petition.

## II. Applicable Law and Standard of Review

¶ 8 The parties agree that the *Medina* test applies here. Under that test, a district court may authorize the involuntary administration of medication if the People demonstrate by clear and convincing evidence that

> (1) the patient is incompetent to effectively participate in the treatment decision;
>
> (2) the treatment with medication is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the

3

patient causing serious harm to himself or others in the

institution;

(3) a less intrusive treatment alternative is not available; and

(4) the patient's need for treatment with medication is

sufficiently compelling to override any bona fide and legitimate

interest he has in refusing treatment.

*Id.*[1]

¶ 9     Application of the *Medina* test involves mixed questions of fact

and law. *People v. Marquardt*, 2016 CO 4, ¶ 8. We defer to the

district court's factual findings if they have record support, while we

review the court's legal conclusions de novo. *Id.* Resolving conflicts

in testimony and determining the credibility of the witnesses are

matters solely within the province of the district court. *People in*

*Interest of Ramsey*, 2023 COA 95, ¶ 23.

---

[1] A different test applies to petitions to administer involuntary medication for the purpose of restoring competency. *See People in Interest of R.F.*, 2019 COA 110, ¶¶ 10-15 & n.1 (discussing the test from *Sell v. United States*, 539 U.S. 166, 180 (2003)). Although Binford was admitted to the hospital for that purpose, the parties do agree — as do we — that *People v. Medina*, 705 P.2d 961 (Colo. 1985), applies here because the purpose of the petition in this case is to prevent Binford from causing harm to himself or others and to prevent a significant and long-term deterioration in his mental condition. *See R.F.*, ¶ 11 n.1.

## III.    Analysis

¶ 10    Binford does not contest the district court's rulings that the People met their burden of proving the first, second, and third *Medina* elements.  However, he challenges the sufficiency of the evidence supporting the court's ruling that the People met their burden of proving the fourth *Medina* element.

¶ 11    In analyzing the fourth *Medina* element, a court first determines "whether the patient's refusal [of treatment] is bona fide and legitimate."  *Medina*, 705 P.2d at 974.  If it is, the court then determines "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution."  *Id.*

¶ 12    On a sufficiency challenge, we must determine whether the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the district court's order.  *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13.  The testimony of the physician seeking to administer treatment may be sufficient, without more, to satisfy the *Medina* test.  *Id.* at ¶ 30.

¶ 13    Binford argues that he had two bona fide and legitimate reasons for refusing the medications: first, to avoid the sedation that he experienced from the medications during his 2024-2025 hospital stay; and second, to avoid other potential side effects that the medications can cause.  However, as the district court found, although Binford had experienced sedation during his 2024-2025 hospital stay, there was no evidence that he was experiencing sedation during his current hospital stay.  Similarly, although Dr. Pillai listed the other *potential* side effects that the medications can cause, there was no evidence that Binford was experiencing any such side effects.

¶ 14    Nevertheless, like the district court, we conclude that even if Binford had bona fide and legitimate reasons to refuse the medications, they are outweighed by Binford's compelling need for treatment with the medications.  On appeal, Binford discusses *only* his interests in refusing the medications; he does not address how those interests should be weighed against his need for treatment.  And notably, Binford has conceded the second *Medina* element that the medications are necessary to prevent both (1) a significant and likely long-term deterioration in his condition, and (2) the likelihood

of him causing serious harm to others in the hospital. The district court's finding that the fourth *Medina* element was met here is strongly supported by Dr. Pillai's testimony, which the court credited, that (1) Binford's condition is severe; (2) Zyprexa and Depakote had been effective in treating his condition during his 2024-2025 hospital stay; (3) Binford had not experienced any side effects from the medications other than "some sedation"; (4) he was not aware of Binford having any underlying health conditions that could be affected or worsened by the medications; and (5) the failure to medicate Binford would be more harmful than the risks posed by the use of the medications. *See Marquardt*, ¶ 8; *Ramsey*, ¶ 23; *R.K.L.*, ¶¶ 13, 30.

¶ 15 In Binford's reply brief, he argues that Dr. Pillai could not know whether he was experiencing any side effects because the "primary method" to determine whether a patient is experiencing side effects is through the patient's self-reporting, but he had been refusing to communicate with his treatment team. However, Dr. Pillai testified that the treatment team also monitors for side effects by observing the patient's presentation on the unit, drawing lab work, obtaining vital signs, and conducting physical examinations.

More importantly, though, because Binford did not appear at the hearing and therefore did not testify regarding any such side effects, the suggestion that he may have been experiencing side effects is speculative.

¶ 16    For these reasons, we discern no error in the district court's ruling that the fourth *Medina* element was met.

## IV.    Disposition

¶ 17    The order is affirmed.

JUDGE WELLING and JUDGE SCHOCK concur.